FILED

OCT 20, 2017

U.S. COURT OF
FEDERAL CLAIMS

# IN THE UNITED STATES COURT OF FEDERAL CLAIMS

ORIGINAL

LARRY GOLDEN,

    Plaintiff, *pro se*,

    v.

THE UNITED STATES,

    Defendant.

No. 13-307 C

Chief Judge Susan G. Braden

## DEFENDANT THE UNITED STATES' MOTION
## FOR PARTIAL DISMISSAL OF
## PLAINTIFF'S FIFTH AMENDED COMPLAINT

RECEIVED - USCFC

OCT 20 2017

# TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................... 1

II.    PLAINTIFF'S DELIBERATE STRATEGY OF MULTIPLYING THE PROCEEDINGS IN THIS AND OTHER COURTS .................................................................... 2

III.   THE GOVERNMENT'S UNDERSTANDING OF PLAINTIFF'S FIFTH AMENDED COMPLAINT ................................................................................................... 4

IV.    RELEVANT LEGAL STANDARDS ............................................................... 7

       A.    Government Liability for Patent Infringement Under 28 U.S.C. § 1498(a) ........... 7

             1.    For the benefit of the government.............................................. 7

             2.    With the authorization and consent of the government. ............................. 8

       B.    Failure to State a Claim for Which Relief Can Be Granted.................................... 8

       C.    *Pro Se* Plaintiffs Are Not Excused From Failures In Pleading............................ 10

V.     SIGNIFICANT PORTIONS OF THE FIFTH AMENDED COMPLAINT SHOULD BE DISMISSED .................................................................................................... 10

       A.    The NSF and NIH Awards Should Be Dismissed, Because They Lack Express Or Implied Authorization and Consent ..................................................................... 11

             3.    The NSF grants should be dismissed. ...................................................... 11

             4.    The NIH grants should be dismissed. ...................................................... 14

             5.    The NSF cooperative agreements should be dismissed............................. 15

       B.    Plaintiff's allegations relating generally to smartphones and other consumer devices should be dismissed. ................................................................................ 16

             1.    The Fifth Amended Complaint fails to allege that these various consumer devices were manufactured for the benefit of the government................ 17

             2.    Plaintiff's omnibus pleading renders implausible its contentions that consumer device makers act with the government's authorization and consent. ................................................................................................ 18

             3.    Plaintiff fails to allege that the government actually uses the accused consumer devices.................................................................................... 20

       C.    Various Other Allegations Should Be Dismissed................................................. 21

1.    A Broad Agency Announcement (BAA) is not a contract, nor does it provide authorization and consent. ........................................................... 21

2.    Bare allegations of infringement of a patent, with no identification of a single claim. .............................................................................................. 22

3.    Allegations of infringement of the '439 Patent based only on pre-issuance activities. .................................................................................................... 23

4.    Any takings claim corresponding to a dismissed patent infringement claim................................................................................................................ 24

VI.   CONCLUSION................................................................................................................... 24

## TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*Advanced Software Designs Corp. v. FRB of St. Louis*, 583 F.3d 1371 (Fed. Cir. 2009) ...............7

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ...........................................................................................9

*Bd. of Trustees of the Leland Stanford Jr. Univ. v. Roche Molecular Systems*,
    563 U.S. 779 (2011)...................................................................................................................6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 554 (2007) ......................................................................8, 9

*Carrier Corp. v. United States*, 534 F.2d 244 (Ct. Cl. 1976) .........................................................7

*Frazier v. United States*, 67 Fed. Cl. 56 (2005)..............................................................................5

*Gharb v. United States*, 112 Fed. Cl. 94 (2013) ...........................................................................22

*Haines v. Kerner*, 404 U.S. 519 (1972) .........................................................................................10

*Henke v. United States*, 60 F.3d 795 (Fed. Cir. 1995) ..................................................................10

*Hughes Aircraft Co. v. United States*, 534 F.2d 889 (Ct. Cl. 1976) ...............................................8

*Illinois v. United States*, 15 Cl. Ct. 399 (1988)..............................................................................1

*Larson v. United States*, 26 Cl. Ct. 365 (1992)...........................................................................7, 8

*Madey v. Duke Univ.*, 413 F. Supp.2d 601 (M.D.N.C. 2006)..........................................................8

*Matter of Avogadro Energy Sys.*,
    B-244106, 91-2 CPD ¶ 229, 1991 WL 182393 (Comp. Gen. Sept. 9, 1991)....................21

*McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178 (1936)...................................................10

*Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746 (Fed. Cir. 1988)..................................10

*Terry v. United States*, 103 Fed. Cl. 645 (Fed. Cl. 2012) .............................................................12

*Riles v. Amerada Hess Corp.*, 999 F. Supp. 938 (S.D. Tex. 1998).......................................7, 8, 16

*Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818 (Fed. Cir. 1984) .....................22

*Sheridan v. United States*, 120 Fed. Cl. 127 (2015) ..................................................................7, 17

*Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372 (Fed. Cir. 2000) .............................................23

## TABLE OF AUTHORITIES
(CONTINUED)

*Shillinger v. United States*, 155 U.S. 163 (1894)..............................................................................24

*Stroughter v. United States*, 89 Fed. Cl. 755 (2009)..........................................................................23

**STATUTES**

28 U.S.C. § 1498...................................................................................................................................7

28 U.S.C. § 1927...................................................................................................................................3

31 U.S.C. § 6303...................................................................................................................................7

31 U.S.C. § 6304............................................................................................................................10, 12

31 U.S.C. § 6305............................................................................................................................10, 15

42 U.S.C. § 1862(b)............................................................................................................................11

35 U.S.C. § 251..................................................................................................................................22

**RULES**

RCFC 1 ..................................................................................................................................................3

RCFC 8(a)..............................................................................................................................................8

RCFC 12(a)(4) ......................................................................................................................................1

RCFC 12(b)(1).......................................................................................................................................1

RCFC 12(b)(6).......................................................................................................................................1

RCFC 10(c)............................................................................................................................................5

RCFC 15(d)............................................................................................................................................3

RCFC 41(b)............................................................................................................................................1

**REGULATIONS**

45 C.F.R. § 75.435(h) .................................................................................................................14

48 C.F.R. § 52.227-1...................................................................................................................6

48 C.F.R. § 2.101(b) ..................................................................................................................22

## I.      INTRODUCTION

The United States (the "government") hereby moves to dismiss parts of Plaintiff's Fifth Amended Complaint (Dkt. No. 120, "Fifth Amended Complaint").   In accordance with RCFC 12(a)(4), this motion is being filed in lieu of an answer. *See Illinois v. United States*, 15 Cl. Ct. 399, 413 (1988).

Plaintiff's latest complaint drastically expands this case from the original twelve (12) to over seventy (70) pairs of patent infringement allegations and overlapping Fifth Amendment Takings claims.  The majority of the products accused by Plaintiff (especially added by the last amendment) are entirely unrelated to the subject matter (let alone the lengthy claims) of Plaintiff's asserted patents, which all relate to "anti-terrorist detection and prevention systems" including "a disabling lock mechanism combined with a chemical/biological/radiological detection system." *See*, *e.g.*, U.S. Pat. No. 7,385,497 at 1:7-12; U.S. Pat. No. 8,106,752 at 1:22-27.   After so many amendments, there is no compelling reason for this Court to continue to entertain such facially deficient allegations.

The instant motion seeks to rationalize this case by identifying related groups of allegations for which the Court clearly lacks jurisdiction (*e.g.*, alleged infringement by or for the government based on grants and cooperative agreements lacking any authorization and consent) and allegations that are facially implausible (*e.g.*, infringement by or for the government based on unfounded allegations that the government contracted with the likes of Apple Inc., Samsung Electronics and LG Electronics to develop mobile phones with biometric devices, such as fingerprint scanners).   Additionally, based on an e-mail communication received from Plaintiff after the Court permitted his last request to amend his Complaint, it is submitted that, in addition to relying on RCFC 12(b)(1) and 12(b)(6), the Court can properly dismiss part (or even all) of Plaintiff's Fifth Amended Complaint under RCFC 41(b).

## II.   PLAINTIFF'S DELIBERATE STRATEGY OF MULTIPLYING THE PROCEEDINGS IN THIS AND OTHER COURTS

As a preliminary matter, after the Court granted Plaintiff leave to amend his complaint for the fifth time and after Plaintiff filed this amended complaint on August 8, Plaintiff sent the government an e-mail revealing that his pattern of continually seeking to add new claims was a deliberate strategy to multiply the proceedings for as long as the government would resist settlement on Plaintiff's terms (amounting to dozens of billions of dollars).   Specifically, Plaintiff revealed:

> As you know **my strategy was to continue submitting claims of "takings" and "infringement" for as long as the Government continued to prolong this case**. (Larry Golden v. The United States; Case # 13-307 C). With that said, of course you know the claims has moved **from twelve (12) claims of "takings" and "infringement" that began in the year 2013, to seventy-two (72) claims** of "takings" and "infringement" as of this year 2017.
>
> The Judge has ordered a final complaint and a final claim chart that was due on August 15, 2017. **Because of the Judge['s] order I can no longer continue my strategy of introducing new "takings" and "infringement" claims or new patents and patent claims**.

Ex. 1 (Plaintiff's August 2017 E-Mail) at 1-2 (emphasis added).   This Court having properly halted Plaintiff's original strategy, Plaintiff now intends to use the *in terrorem* effect of litigation in Federal District Court against Apple, Samsung, LG and other companies having no colorable connection to this case or Plaintiff's patents:

> My new strategy is to file a complaint(s) in Federal District Court against Apple, Samsung, LG, Panasonic, and Motorola for Patent infringement on March 1, 2018 . . . to force Apple, Samsung, and LG to decide between one or two choices: (1) In an effort to avoid any responsibility for infringement or liability of paying hundreds of billions of dollars in damages, the companies chose to throw the Government under the bus by **presenting evidence that they were under contract to develop and manufacture devices that infringes my communication / monitoring device**. If they chose this option it makes them a witness for me in my current case (Larry Golden v. The United States; Case # 13-307 C)[; or] (2) Deny the allegations of infringement. **In this case I will present evidence to support the fact that the companies were under contract with the Government to develop and manufacture devices that infringes my**

> **communication / monitoring device**, but that the companies decided to continue to develop and manufacture my communication / monitoring device beyond the specifications agreed upon with the Government, even after I notified the companies in 2010 to stop their manufacturing. If they chose this option it opens the companies up to willful infringement and the possibility of a temporary injunction to stop the manufacturing and development of my communication / monitoring device. If you were Apple, Samsung, and LG which option would you chose.

Ex. 1 (Plaintiff's August 2017 E-Mail) at 2. This "new strategy" would abuse the power of this Court (and others) and should not be facilitated or condoned.

Aside from reflecting Plaintiff's deliberate intent to take advantage of the Court's patience and generosity in repeatedly granting Plaintiff with leave to amend his complaint, Plaintiff's strategies directly contravene 28 U.S.C. § 1927, which prohibits a party from "multipl[ing] the proceedings in any case unreasonably and vexatiously." *Pro se* plaintiffs may be entitled to some leniency in pleading, but they are not excused from knowing and following the Court's rules. Plaintiff's prior strategy of adding new claims also violates RCFC 1, which states that the Rules (including RCFC 15(d), which Plaintiff specifically invoked to add new claims, *see* Dkt. 108) are to be employed by "the parties to secure the just, speedy, and inexpensive determination of every action and proceeding."

Accordingly, it is respectfully submitted that, in addition to RCFC 12(b)(1) and 12(b)(6), any and all of the grounds for dismissal in this motion are further justified under RCFC 41(b), which permits dismissal when a plaintiff fails to comply with the Rules or a Court order. This ground for dismissal is especially appropriate for the scores of new allegations (identified in Appendix A, which attempts to Plaintiff's myriad allegations in chart form) injected into this case by Plaintiff's Fifth Amended Complaint.

## III.   THE GOVERNMENT'S UNDERSTANDING OF PLAINTIFF'S FIFTH AMENDED COMPLAINT

The 178 pages of the Fifth Amended Complaint contain 413 numbered paragraphs allegedly setting forth over 70 allegations of patent infringement and corresponding takings claims. Nine (9) patents and a published patent application are identified. Approximately 30 governmental agencies or entities are allegedly implicated.[1] More than 25 private parties— ranging from Apple Inc. and Samsung to public and private universities and small contractors— are mentioned.[2] The allegations are even more difficult to comprehend and evaluate because they splice together phrases from various websites without proper context or attribution. Because of the sprawling, confusing and unconventional nature of the allegations in the Fifth

---

[1]     Identified governmental entities include: Department of Homeland Security (DHS), Homeland Security Advanced Research Project Agency (HSARPA), Department of Homeland Security Science & Technology Directorate (DHS/S&T), Department of Homeland Security Integrated Chemical Biological Radiological Nuclear Explosives (DHSACBRNE), Department of Defense (DoD), U.S. Defense Advanced Research Projects Agency (DARPA), Department of Air Force (DOAF), The Air Force Research Laboratory (AIRL), Department of the Army (DOA), Army Research Laboratory (ARL), U.S. Army Communications-Electronics Research, Development and Engineering Center (CERDEC), U.S. Army Edgewood Chemical Biological Center (ECBC), Department of the Navy (DON), U.S. Naval Air Systems Command (NAVAIR), Office of Naval Research (ONR), U.S. Naval Research Laboratory (NRL), Domestic Nuclear Detection Office (DNDO), Joint Program Executive Office for Chemical and Biological Defense (JPEO-CBD), Joint Acquisition Chemical Biological Radiological Nuclear Knowledge System (JACKS), Chemical Biological Radiological Nuclear Information Resource Center (CBRN-IRC), Defense Threat Reduction Agency (DTRA), Department of Energy (DOE), Department of Energy/Oak Ridge National Laboratory (DOE/ORNL), Environmental Protection Agency (EPA), National Science Foundation (NSF), National Institutes of Health (NIH), National Aeronautics and Space Administration (NASA), Federal Emergency Management Agency (FEMA), General Services Administration (GSA), Department of Justice (DOJ).

[2]     Identified private parties include Apple Inc., Samsung, LG Electronics, Qualcomm, Ford, Volkswagen, Northrop Grumman, Oshkosh Defense, Lockheed Martin, Boeing, Raytheon, University of Illinois, Cornell University, UCLA, University of Houston Cullen College of Engineering, MIT, Stanford, Caltech, University of California Merced, Biomeme, Kromek Group plc, PositiveID Corporation, Passport Systems, Alluviam LLC, Holmic LLC, and Eureka Aerospace.

Amended Complaint, the government summarizes its understanding of the organization of the Complaint as follows:

- **¶¶1-20**: Parties and general citations to 28 U.S.C. §§ 1491 and 1498, and case law.

- **¶¶21-35**: Plaintiff's abbreviated summary of the case's procedural history, beginning in December 2015, when Plaintiff sought and was permitted to file his Fourth[3] Amended Complaint, which was filed on February 12, 2016 (Dkt. 68).

- **¶¶36-86**: Plaintiff's alleged factual background, including

  - o **¶¶36-38, 40-48**: Alleged facts relating generally to the asserted patents

  - o **¶¶39, 49-84**: Plaintiff's collection of alleged facts supporting his allegations of unauthorized use of his patents by the government based on unidentified "expressed contracts" between the government and Apple Inc., Samsung, LG, Qualcomm, Panasonic and Motorola, and "an implied contract . . . drawn between all the Government's departments" and phone manufacturers such as Apple Inc., Samsung, LG, Qualcomm, Panasonic and Motorola. These allegations cite a GAO report, a portion of Plaintiff's document production ("Section VII") and an undated Defense Technical Information Center (DTIC) publication.[4]

---

[3]      Plaintiff's original complaint was filed on May 1, 2013 (Dkt. 1). Since then, Plaintiff has sought to amend or supplement pleadings at least seven (7) times. *See, e.g.*, Dkt. Nos. 6 ("Notice of Supplement"), 11 (Motion to Amend Complaint), 14 (Motion to Supplement Complaint), 29 (Motion to Amend Pleadings), 82 (Motion for entry of devices supplied to the government), 107 (Chart Motion), 108 (Complaint Motion). In addition, Plaintiff had already filed a more definite statement (Dkt. No. 21) and an amended complaint (Dkt. No. 68).

[4]      These documents are attached as Exs. 2-5, respectively and treated as part of the Fifth Amended Complaint. In deciding the instant motion, and without converting it into one for summary judgment, this Court may consider the full text of documents quoted in or attached to the Complaint. *Frazier v. United States*, 67 Fed. Cl. 56, 59 (2005), *aff'd*, 186 Fed. App'x. 990 (Fed. Cir. 2006); *see also* RCFC 10(c).

     ○   **¶85**: Apparently quoting from a law firm website without attribution[5], an inapposite reference to the "subject invention" provisions of the Bayh-Dole Act. *See also Bd. of Trustees of the Leland Stanford Junior Univ. v. Roche Molecular Systems*, 563 U.S. 779 (2011) (holding that that title in a patented invention vests first in the inventor, even if the inventor is employed by a facility subject to the Bayh–Dole Act).

     ○   **¶86**: Out of context from the same website, quoting FAR 52.227-1.

- **¶¶87-90**: Plaintiff's "Omnibus" Fifth Amendment Takings Claim (styled as "Count I"), which the government understands to remain stayed pursuant to this Court's March 31, 2014 Order (Dkt. 38).

- **¶¶91-92**: Plaintiff's "Omnibus" Patent Infringement Claim (styled as "Count II")

- **¶¶93-406**: Allegations of takings and infringement of 70+ groups of instrumentalities, which are summarized in Appendix A. In each group, Plaintiff's takings claim precedes the corresponding infringement claim. As particularly relevant to this motion, these allegations include the following groups:

     ○   **¶¶93-152**: Allegations targeting various consumer devices such as smartphones developed and sold by LG, Apple and Samsung

     ○   **¶¶184-185, 194-195, 199-200, 235-236, 260-261, 265-266, 270-271, 275-276, 280-281, 285-286, 290-291, 295-296, 300-301, 305-306, 350-351**: Allegations of infringement based on National Science Foundation ("NSF") grants and cooperative agreements

---

[5]   *See* "The Government's Patent Policy: The Bayh-Dole Act and 'Authorization and Consent'" (available at *https://www.mofo.com/resources/news/the-governments-patent-policy-the-bayh-dole-act-and-authorization-and-consent.html*) (containing identical statements).

- o **¶¶300-301, 335-336, 355-356, 360-361, 365-366**: Allegations of infringement based on National Institutes of Health ("NIH") grants.

- **¶¶407-413**: Prayer for Relief

## IV. RELEVANT LEGAL STANDARDS

### A. Government Liability for Patent Infringement Under 28 U.S.C. § 1498(a)

Section 1498(a) provides patent owners with a remedy of damages in this Court when the claimed invention is "used or manufactured by . . . the United States" without a license. 28 U.S.C. § 1498(a). Use by a contractor is not the same as use by the government. *See Carrier Corp. v. United States*, 534 F.2d 244, 249 (Ct. Cl. 1976) (finding use, if any, of a patent was by a contractor, not the government). Instead, a private party's (*e.g.*, contractor, subcontractor, person, firm, corporation) use or manufacture of claimed invention will be considered a "use or manufacture for the [government]" if the use/manufacture is (1) for the benefit of the government, and (2) with the government's "authorization or consent." *Id.*; *see Advanced Software Designs Corp. v. FRB of St. Louis*, 583 F.3d 1371, 1376, 1378 (Fed. Cir. 2009). The typical vehicle for acquiring property or services from a private party for the direct benefit or use of the government is a procurement contract. *See* 31 U.S.C. § 6303.

#### 1. For the benefit of the government.

Addressing the first requirement, "[w]here benefits to the Government are merely an incidental effect of private conduct, they do not constitute "use or manufacture for the Government' within the meaning of § 1498." *Sheridan v. United States*, 120 Fed. Cl. 127, 131 (2015) (1992) (citing *Advanced Software*, 583 F.3d at 1379). For example, even when an offshore oil driller had to pay a 12.5% royalty to the federal government as a condition for its awarded leases, and the leases expressly required the driller to conform its activities to the applicable oil and gas regulations, the driller's actions were not "for the government." *Riles v.*

- 7 -

*Amerada Hess Corp.*, 999 F. Supp. 938, 938-39, 941 (S.D. Tex. 1998).   Instead, "[t]he government simply makes the land available and receives a royalty for doing so." *Id.* at 940.

### 2. *With the authorization and consent of the government.*

Addressing the second requirement, the government can provide express authorization and consent, often by including the operative clause in a contract, or by providing other formal, written authorization.  This authorization and consent may be limited by clauses in the contract. *See Carrier*, 534 F.2d at 249 (holding that the government can limit the scope of its express authorization and consent).

In limited circumstances, authorization and consent may be implied.   For example, implied authorization and consent may be found "by contracting officer instructions, [or] by specifications or drawings which impliedly sanction and necessitate infringement." *Hughes Aircraft Co. v. United States*, 534 F.2d 889, 901 (Ct. Cl. 1976).   In another example, authorization and consent may be implied when "(1) the government expressly contracted for work to meet certain specifications; (2) the specifications cannot be met without infringing on a patent; and (3) the government had some knowledge of the infringement." *Larson v. United States*, 26 Cl. Ct. 365, 370 (1992).  However, "implied consent operates as a waiver of sovereign immunity," so "it is clear that any implied consent should be narrowly construed." *Madey v. Duke Univ.*, 413 F. Supp.2d 601, 609 (M.D.N.C. 2006).

### B.   Failure to State a Claim for Which Relief Can Be Granted

To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief."  RCFC 8(a)(2).  As the Supreme Court has interpreted this Rule as requiring "plausibility," not just "possibility":

> To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." [*Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007).]  A claim has facial plausibility

- 8 -

when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.*, at 556. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Id.*, at 557.

*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (parallel citations omitted).

"[W]hile Rule 8 does not require 'detailed factual allegations,' it does require more than 'labels and conclusions.'" *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1062 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 555). And while all well-pled factual allegations are taken as true and the court indulges in all reasonable inferences in favor of the non-movant, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Terry v. United States*, 103 Fed. Cl. 645, 652 (2012); *Twombly*, 550 U.S. at 555. As *Twombly* involved antitrust liability under the Sherman Act, the plaintiff was required to plead facts that would tend to rule out mere parallel conduct or interdependence, which do not create liability under the Sherman Act, and instead plead "enough factual matter (taken as true) to suggest that an agreement was made." *Twombly*, 550 U.S. at 554-56. This is particularly relevant in the Section 1498(a) context where the key inquiry is whether the government provided authorization and consent, either expressly or by implication, to a third party to make or use another's patented invention.

One factor considered by the *Twombly* Court was to prevent a plaintiff with "a largely groundless claim" to "take up the time of a number of other people with the right to do so representing an in terrorem increment of the settlement value." *Id.* (quoting *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336, 347 (2005)). This principle resonates in this case, which by Plaintiff's Fifth Amended Complaint, allegedly implicates dozens of government agencies and private

- 9 -

parties on highly dubious claims of patent infringement bearing no colorable relationship to the asserted patents.

### C.     *Pro Se* Plaintiffs Are Not Excused From Failures In Pleading

As this Court has repeatedly exercised in this case, *pro se* plaintiffs' pleadings are held to a less stringent standard than pleadings drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).   On the other hand, while the Court may excuse ambiguities in a *pro se* plaintiff's complaint, the Court "does not excuse [its] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).   Additionally, a *pro se* plaintiff must still allege facts essential to show jurisdiction, and ultimately come forward with evidence to establish, by a preponderance of the evidence, that the Court possesses jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

### V.     SIGNIFICANT PORTIONS OF THE FIFTH AMENDED COMPLAINT SHOULD BE DISMISSED

The following allegations of Plaintiff's Fifth Amended Complaint should be dismissed:

A.     Allegations relating to NSF and NIH grants devoid of express or implied authorization and consent.

B.     Allegations relating to smartphones and other consumer devices, generally.

C.     Residual allegations, including

1. Bare allegations of infringement of a patent, with no identification of a single claim.

2. Allegations of infringement of the '439 Patent based only on pre-issuance activities.

3. Any takings claim corresponding to a dismissed patent infringement claim.

These arguments are discussed in turn below.  In moving now for dismissal of only parts of Plaintiff's Fifth Amended Complaint, the government reserves its right to subsequently move for dismissal or summary judgment of Plaintiff's remaining claims as permitted under the Rules and this Court's orders.

## A.    The NSF and NIH Awards Should Be Dismissed, Because They Lack Express Or Implied Authorization and Consent

Nearly twenty (20) of Plaintiff's allegations relate to non-contract NSF and NIH awards lacking any authorization and consent clause.  All but two (2) of the accused awards are grants. Grants, by their nature, are used to transfer value (typically money) to carry out an attenuated public purpose (*i.e.*, "of support or stimulation") instead of acquiring property or services for the direct benefit or use of the government.[6]  31 U.S.C. § 6304 ("Using grant agreements").  The remaining two awards are NSF cooperative agreements, while contemplating more involvement between the government and the awardee, are still used in lieu of contracts.  31 U.S.C. § 6305 (Using cooperative agreements).

### 3.   *The NSF grants should be dismissed.*

The accused NSF awards are grants, not contracts.  *See* National Science Foundation Act of 1950, as amended, at 42 U.S.C. § 1862(b) (differentiating between "contracts" and "other arrangements (including grants . . .)").  Moreover, the NSF grants are entirely devoid of express or implied authorization and consent by the government.  Of the eleven (11) NSF awards targeted by the Fifth Amended Complaint, nine (9) are grants and are listed in the table below:

| Award Number | Complaint ¶¶ | Bates[7] / Exhibit | Incorporated | NSF |
|---|---|---|---|---|

---

[6]     *See, e.g.*, 31 U.S.C. § 6304 (Using grant agreements) and 31 U.S.C. § 6305 (Using cooperative agreements).

[7]     Pursuant to this Court's Jurisdictional Discovery Order (Dkt. 97), the government produced redacted versions of the award letters, proposals and related correspondence between the NSF and the grantees.

| | | | Terms |
|---|---|---|---|
| 1029585 | 199-200 | NSF_0003367 Ex. 6 | RTC Agency-Specific Requirements (Jan. 2010) |
| 1264377 | 280-281 and 305-306 | NSF_0003722 Ex. 7 | RTC Agency-Specific Requirements (Jan. 14, 2013) |
| 1332275 | 275-276 | NSF_0003725 Ex. 8 | RTC Agency-Specific Requirements (Jan. 14, 2013) |
| 1343058 | 265-266 and 350-351 | NSF_0003728 Ex. 9 | RTC Agency-Specific Requirements (March 7, 2014) |
| 1444240 | 260-261 and 300-301 | NSF_0003732 Ex. 10 | RTC Agency-Specific Requirements (March 7, 2014) |
| 1447893 | 285-286 and 235-236 | NSF_0003735 Ex. 11 | RTC Agency-Specific Requirements (March 7, 2014) |
| 1450552 | 295-296 and 184-185 | NSF_0003738 Ex. 12 | RTC Agency-Specific Requirements (March 7, 2014) |
| 1533983 | 270-271 | NSF_0003741 Ex. 13 | GC-1 (Dec. 26, 2014) |
| 1534126 | 290-291 | NSF_0003744 Ex. 14 | GC-1 (Dec. 26, 2014) |

As evident from the award letters for each NSF grant (attached as Exhibits 6-14 hereto), they contain no language of express authorization and consent.[8]

Nor would it be reasonable to find that authorization and consent is implied in the identified NSF grants. Starting with the definition of a "grant," these agreements are used when "substantial involvement is not expected" between the agency and the recipient "when carrying out the activity contemplated in the agreement." 31 U.S.C. § 6304. The NSF-related documents

---

[8] *See Terry v. United States*, 103 Fed. Cl. 645, 652 (Fed. Cl. 2012) ("[D]ocuments appended to a motion to dismiss 'are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to his claim. Such documents may be considered by a district court in ruling on a motion to dismiss.'") (quoting *Wright v. Assoc. Ins. Cos.*, 29 F.3d 1244, 1248 (7th Cir. 1994)).

produced by the government to Plaintiff (with courtesy copies having been provided to the Court) reflect a pattern of activity and correspondence (*i.e.*, first, a detailed proposal is submitted; second, an award letter is issued with few conditions and little to no guidance; third, the awardee submits annual and final reports to document its efforts and outcomes "whether or not they are successful") that comports with the hands-off nature of grants, and the lack of control exercised by the government in directing the activities of the awardees. *See* NSF Production Log at Appendix B.

The expressly incorporated NSF Research Terms & Conditions ("RTC") Agency-Specific Requirements clearly undermine the proposition that the NSF grants include implied authorization and consent:

> **Liability**
>
> NSF cannot assume any liability for accidents, illnesses or claims arising out of any work supported by an award or for unauthorized use of patented or copyrighted materials. The grantee institution is advised to take such steps as may be deemed necessary to insure or protect itself, its employees and its property.

Ex. 15 (NSF Terms & Conditions Excerpts) at NSF RTC Agency-Specific Requirements (January 2010)[9] Art. 25, NSF RTC Agency-Specific Requirements (Jan. 14, 2013)[10] Art. 32, NSF RTC Agency-Specific Requirements (March 7, 2014)[11] Art. 34. Two of the awards expressly incorporate the NSF Grant General Conditions ("GC-1"), which include an even broader disclaimer of liability evincing a clear intent not to imply authorization and consent:

> **Liability**
>
> NSF cannot assume any liability for accidents, bodily injury, illness,

---

[9]    Archived at *https://www.nsf.gov/pubs/policydocs/rtc/nsf_110.pdf*

[10]   Archived at *https://www.nsf.gov/pubs/policydocs/rtc/agencyspecifics/nsf_113.pdf*

[11]   Archived at *https://nsf.gov/pubs/policydocs/rtc/agencyspecifics/nsf_314.pdf*

breach of contract, any other damages or loss, or any claims arising out of any activities undertaken pursuant to the grant, whether with respect to persons or property of the grantee or third parties. The grantee institution is advised to insure or otherwise protect itself or others, as it may deem desirable.

Ex. 15 at NSF GC-1 (Dec. 26, 2014)[12] § 45.

### 4.  *The NIH grants should be dismissed.*

The accused NIH awards are also grants entirely devoid of express or implied authorization and consent by the government.  Newly added by the Fifth Amended Complaint, the accused NIH awards are summarized by the chart below:

| Complaint ¶¶ | Plaintiff's Description | Apparent NIH Project No. | Exhibit |
|---|---|---|---|
| 335-336 | Smartphone-operated "LAMP box": Apple iPhone | 1R21AI120973 | 16 |
| 355-356 | FeverPhone: Apple iPhone | 1R01EB021331 | 17 |
| 360-361 | Solar Thermal PCR Test: Apple iPhone | 1R43CA193096 | 18 |
| 365-366 | Lab-on-a-Drone: Apple iPhone | 1R43AI107984 | 19 |

As clearly demonstrated by the attached award letters (Exs. 16-19), each of the accused NIH awards are grants, not procurement contracts.  Like the NSF awards previously discussed, the NIH grants lack express authorization and consent language that would trigger government liability.

Nor can authorization and consent be reasonably implied in these NIH grants, as their Terms & Conditions include 45 C.F.R. Part 75, which disallows the awardee from submitting "[c]osts of legal, accounting, and consultant services, and related costs, incurred in connection with patent infringement litigation unless otherwise provided for in the Federal award."  45 C.F.R. § 75.435(h) ("Defense and prosecution of criminal and civil proceedings, claims, appeals, and patent infringements").  As the accused NIH awards do not "otherwise provide[] for" the

---

[12]     Archived at *https://www.nsf.gov/pubs/policydocs/gc1/dec14.pdf*

awardee to recoup from the government the cost of defending against patent infringement litigation, implied authorization and consent is absent from these grants.

### 5. *The NSF cooperative agreements should be dismissed.*

The Fifth Amended Complaint (at ¶¶194-95) also accuses the "COINS" project, which are associated with the two (2) NSF cooperative agreements ("CAs") identified by Award Nos. 0425914 and 0832819.   *See* NSF_0003713 (Ex. 20) and NSF_0003709 (Ex. 21). Cooperative agreements, by definition, envision more substantial involvement between the government and the awardee.   31 U.S.C. § 6305(2).   However, the purpose of a cooperative agreement is identical to that of a grant: to pay someone to carry out an attenuated public purpose instead of purchasing property or services for the direct benefit or use of the government. 31 U.S.C. § 6305(1).

Compared to grants, the CAs include additional terms, but none of them relate to activities that would have any bearing whether the awardee had to create a system that would necessarily infringe the asserted patents.   *See, e.g.*, Award Nos. 0425914 and 0832819 ("Programmatic Terms & Conditions (PTC)").   Instead, the additional terms of the CAs related to project governance, management and even educational outreach.

Moreover, the COINS CAs expressly incorporate Cooperative Agreement Financial & Administrative Terms ("CA-FATC"), which including the same avoidance-of-liability language present in the NSF grants:

> **Liability**
>
> NSF cannot assume any liability for accidents, illnesses, injuries, or claims arising out of, or related to, any activities supported by an award or for unauthorized use of patented or copyrighted materials. The awardee organization is advised to take such steps as may be deemed necessary to insure or protect itself, its employees and its property.

Ex. 15 (NSF Terms & Conditions Excerpts) at NSF CA-FATC (July 2004)[13] § 38 and NSF CA-FATC (June 2007)[14] § 39.  As with the NSF grants, the liability-limiting language included in the NSF CAs undermines any suggestion that the CAs imply the government's authorization and consent to infringe another's patent.

Accordingly, the allegations relating to NSF and NIH awards must be dismissed because the awards make clear that the government has not given authorization and consent to the private party awardees to use or manufacture an invention covered by another's patent.  As such, Plaintiff cannot prove that this Court has jurisdiction over the alleged infringement.  In the alternative, if the Court considers this argument to be more properly brought under RCFC 12(b)(6), the government respectfully submits that Plaintiff's allegations targeting NSF and NIH awards, which are grants or cooperative agreements lacking any authorization and consent, fail to state a claim upon which relief can be granted under Section 1498.

**B.**   **Plaintiff's allegations relating generally to smartphones and other consumer devices should be dismissed.**

Plaintiff's Fifth Amended Complaint (at ¶¶96-97, 101-102, 106-107, 111-112, 116-117, 121-122, 126-127, 131-132, 136-137, 141-142, 146-147, 151-52) attempts to inject into this case a dozen new consumer devices (including Apple iPhones, Samsung and LG smartphones, smart watches, "smart home" locks and "smart car" applications) having no plausible relationship to Plaintiff's patents, which are directed to an entirely different class of devices: anti-terrorist detection and prevention systems having a disabling lock mechanism and a chemical/biological/radiological detection system.  '497 Patent at 1:7-12; '033 Patent at 1:14-19.

---

[13]   Archived at *https://nsf.gov/pubs/cafatc/cafatc0704.pdf*

[14]   Archived at *https://www.nsf.gov/pubs/policydocs/cafatc_607.pdf*

These spurious new allegations should be dismissed for several reasons. First, the Fifth Amended Complaint fails to allege that any of these various consumer devices were made for the benefit of the government. Second, Plaintiff improperly alleges infringement by or for the government in irreconcilably vague and omnibus fashion by repeatedly citing "contracts, agreements, and procurements with various Government Agencies (¶¶ 49-78 [of the Fifth Amended Complaint]), the Department of Homeland Security (DHS) and [Apple/Samsung/LG Electronics]." Third, especially in view of the alleged "support" for its allegations, the Fifth Amended Complaint fails to sufficiently allege actual "use" by the government of the various combinations of consumer devices, nor would the government's use be plausible.

### 1. The Fifth Amended Complaint fails to allege that these various consumer devices were manufactured for the benefit of the government.

As a starting point, each one of the consumer device allegations should be dismissed for failing to allege that they were made for the benefit of the government, which is a jurisdictional prerequisite to sweeping in the conduct and contributions of private entities such as Apple, Samsung and LG.

In particular, the Fifth Amended Complaint repeatedly alleges that the government contracted with Apple, Samsung and LG "for the manufacture, development, commercialization, and/or use" of the accused phones and other consumer devices without articulating any alleged benefit for the government. Based on common experience, it is known that these consumer device companies manufacture, develop, and commercialize their devices in their own economic self-interest, similar to the oil driller in *Riles* who "did not agree to drill for the Government simply because the Government receives some monetary benefit [due to royalties] as a byproduct of the activity." *Riles*, 99 F. Supp. at 940; *see also Sheridan v. United States*, 120 Fed. Cl. 127, 131 (2015) (finding alleged benefit to the government of economic "stimulus, jobs, and revenue"

- 17 -

was "merely an incidental effect of private conduct [that does] not constitute 'use or manufacture for the Government' within the meaning of § 1498").

In the context of Takings, but not infringement, the Fifth Amended Complaint describes use "for the benefit of the public," but does still does not allege a benefit for the government. And unlike the other allegations in the complaint that have clear defense or counter-terrorism applications (e.g., ¶¶240-241, describing making radiation detectors to detect dirty bombs) for which a governmental benefit may be inferred, the benefits to the government in the consumer device context are much less obvious.    Accordingly, because Plaintiff's consumer device allegations fail to plead any facts regarding the purported benefits for the government of device makers' allegedly infringing activities, these allegations should be dismissed.

### 2.  *Plaintiff's omnibus pleading renders implausible its contentions that consumer device makers act with the government's authorization and consent.*

Instead of clearly alleging facts that would render each of its allegations plausible, each consumer device allegation incorporates by reference an omnibus pleading of supposed facts (¶¶49-78, where ¶78 incorporates another document) instead of identifying any supposed "contracts, agreements, and procurements."  Not only is this shot-gun pleading improper, the content of this incorporated material (which also includes the cited documents) also renders Plaintiff's claims implausible.

For example, many of the incorporated allegations describe security or IT approvals being granted to use iPhones and the like on a federal network. *See, e.g.*, ¶¶53, 65, 66, 67, 69, 71, 73, 77.  In addition to security or IT approvals failing to show joint development, reliance on these passages undermines Plaintiff's claim that these devices were designed or manufactured in partnership with the government.  Logically, why would the government need to undertake security approval programs to allow these devices on its networks if, as Plaintiff assumes, the

devices were designed and manufactured with the government in the first instance? Additionally, unquoted portions of the document incorporated at ¶78 (Ex. 5), which is a report created under a government contract (FA1500-10-D-0010), further undermines Plaintiff's assumption that these devices were made for the government by failing to mention any government involvement in developing these devices:

- The iPad® is a tablet computer developed by Apple® Inc. The iPhone® is Apple's smartphone.
- Android™ is a mobile operating system developed by Google® Inc.

Ex. 5 at 34, 36.  Based on Plaintiff's own incorporated documents, Plaintiff's claim—that iPhones and other consumer devices were manufactured, developed and commercialized for the government—is simply not plausible.

Problematically, although Plaintiff's quote (at ¶51) to DHS's reported pursuit of Cooperative Research and Development Agreements (CRADAs) with Qualcomm, LG, Apple and Samsung may have been "taken directly" from the DHS website as Plaintiff alleges, Plaintiff has placed this quote entirely out of context.  To start, by definition, a CRADA cannot be used by the government to provide funds to non-Federal parties.  15 U.S.C. § 3710a (d)(1) (definition of "cooperative research and development agreement").  Critically, the CRADAs being referred to relate specifically to the DHS "Cell-All" program, which did not envision developing the consumer features of the Apple iPhone or Samsung Galaxy, as Plaintiff's allegations imply. Instead, the Cell-All project "aims to equip your cell phone with a sensor capable of detecting deadly chemicals at minimal cost—to the manufacturer . . . and to your phone's battery life." Ex. 3 (Plaintiff's production Section VII.A) at "Cell-All: Super Smartphones Sniff Out

Suspicious Substances", page 2/4.[15]   Again, common experience demonstrates that consumer smartphones do not have this feature.   Nor does this statement shed light on whether Cell-All CRADAs with the likes of Apple or Samsung were ever executed after the articles describes them as being pursued.

### 3. *Plaintiff fails to allege that the government actually uses the accused consumer devices.*

The Fifth Amended Complaint lacks allegations of actual use by the government of the various consumer devices.   For example, as to the LG Electronics G5 and V10 smartphones, Plaintiff can only allege that "[b]oth the LG G5 and V10 smartphones <u>can</u> be used by the Department of Defense."   Fifth Amended Complaint ¶¶96, 101.   Plaintiff does not even attempt to allege actual use of the LG devices by DoD or DHS.   Accordingly, the allegations relating to the LG Electronics products should be dismissed.[16]

Neither does Plaintiff not allege actual use by the government of the various Apple-related devices.   For example, as to the iPhone/iPad "Camera Biosensor" (¶¶106-107), Plaintiff describes only that a new application is available for the iPhone that allows the camera to measure a user's heart rate.   No governmental use is alleged.   Similarly, Plaintiff alleges no actual governmental use of the iPhone/iPad and the Apple Watch[17] (¶¶111-112), the August

---

[15]    Apparently printed from *https://www.dhs.gov/science-and-technology/cell-all-super-smartphones-sniff-out-suspicious-substances*

[16]    The government does not move to dismiss all of Plaintiff's allegations relating to the DHS "Cell-All" program (*e.g.*, ¶¶189, 215); instead, the government seeks dismissal of Plaintiff's allegations (at ¶¶96-97, 101-102) that the LG Electronics G5 and V10 smartphones—standing on their own—can infringe Plaintiff's patents.

[17]    Illustrative of the various veracity issues seen in Plaintiff's allegations, Plaintiff's own documents, including citation to the Apple website, provide no evidence to support his claim that "Apple Watch can 'speak' to the iPad."   Indeed, publicly available information strongly suggests the opposite: *https://discussions.apple.com/thread/7964167?start=0&tstart=0* (Q: Can I use Apple Watch using iPad; A (Apple Recommended): No).

Smart Lock (¶¶116-117, 121-122) or Ford MyFord Mobile Application (¶¶126-127). Especially given the rigors of IT and security required to approve iPhones (as documented in Plaintiff's alleged support), it is not plausible for the government (especially DHS, as alleged) to be using these consumer devices.

Plaintiff's allegations targeting the Samsung Galaxy s6 mirror the Apple allegations and suffers from the same deficiencies. For example, Plaintiff alleges no government use of the heart rate monitor included in the Samsung Galaxy smartphone (¶¶131-132). Nor does Plaintiff allege government use of the Samsung Gear S2 Smartwatch (¶¶136-137), Yale Assure Lock (¶¶141-142, 146-147), and Volkswagen Car-Net e-Remote (¶¶151-152). As with the Apple products, it is not plausible for the government (especially DHS, as alleged) to be using these consumer devices.

With a view towards rationalizing this case to focus on those still numerous claims which are plausible on their face, the various allegations of infringement by consumer devices should be dismissed.

### C.   Various Other Allegations Should Be Dismissed.

A variety of other allegations should also be dismissed before this case enters claim construction and discovery.

#### 1.   *A Broad Agency Announcement (BAA) is not a contract, nor does it provide authorization and consent.*

The Fifth Amended Complaint (at ¶¶161-168) alleges infringement based on a number of devices allegedly developed by third party Passport Systems, Inc. in response to a Broad Agency Announcement ("BAA") issued by the Domestic Nuclear Detection Office ("DNDO") of DHS. However, these a BAA is not a contract. Instead, a BAA is "a general announcement of an agency's research interest including criteria for selecting proposals and soliciting the

- 21 -

participation of all offerors capable of satisfying the Government's needs." 48 C.F.R. § 2.101(b). BAAs are ordinarily used to fulfill requirements for "scientific study and experimentation directed toward advancing the state of the art or increasing knowledge or understanding rather than focusing on a specific system or hardware solution." *Matter of Avogadro Energy Sys.*, B-244106, 91-2 CPD ¶ 229, 1991 WL 182393, at *1 (Comp. Gen. Sept. 9, 1991); *see also* 48 C.F.R. § 35.016.

In operation, the Government may receive one or more proposals responding to the BAA, and the government has the option of funding those efforts and awarding contract. *Avogadro Energy* at 1. However, the Government is "under no obligation to award any contracts" based on the proposals it receives. *Id.* Lacking such an obligation, a BAA cannot be said to provide authorization and consent. By relying on the BAA alone, Plaintiff fails to identify any contract between Passport Systems and DHS, and thereby fails to plausibly allege that the Government either used or manufactured any technologies described it the BAA. *See Gharb*, 112 Fed. Cl. at 97-98.

### 2. *Bare allegations of infringement of a patent, with no identification of a single claim.*

Starting with the '033 Patent, there is no subject matter jurisdiction under Section 1498, because this patent was surrendered when it was reissued as Patent Nos. RE43,891 and RE43,990. 35 U.S.C. § 251 ("... the Director shall, on the surrender of such patent and the payment of the fee required by law, reissue the patent for the invention disclosed in the original patent ..."); *Seattle Box Co. v. Indus. Crating & Packing, Inc.*, 731 F.2d 818, 827 (Fed. Cir. 1984) (nothing that, once a reissue patent has been granted, "the original patent cannot be infringed ... for the original patent is surrendered").

Turning to the "asserted" patent application, there is no subject matter jurisdiction under Section 1498 over alleged infringement of unissued claims. *Stroughter v. United States*, 89 Fed. Cl. 755, 761-62 (2009) ("Because plaintiffs' claims allege the infringement of unissued patents, the court's jurisdiction under § 1498 is lacking.").

As to U.S. Patent Nos. 8,334,761, 8,531,280 and 9,096,189, the Fifth Amended Complaint alleges no infringement of any claim of these three patents. It is axiomatic that the claims of a patent define the metes-and-bounds of the invention being claimed and define what constitutes infringement of the patent. *See, e.g., Solomon v. Kimberly-Clark Corp.*, 216 F.3d 1372, 1379 (Fed. Cir. 2000). Especially in view of this Court's admonition that Plaintiff's latest complaint and claim charts would be his last, these patents should be dismissed from this action.

### 3. Allegations of infringement of the '439 Patent based only on pre-issuance activities.

By way of the Fifth Amended Complaint, Plaintiff now alleges infringement of the '439 Patent (which issued only on March 7, 2017) by over 40 product categories without regard to whether the allegedly infringing activity was still ongoing when the '439 Patent issued. For example, Plaintiff alleges that the BioWatch Generation 3 program infringes this patent, despite publicly available information of the same character as relied upon by Plaintiff (*i.e.*, a GAO Report) showing that this program had been cancelled in April 2014, nearly 3 years prior to issuance of the '439 Patent. *See* Ex. 22 (GAO-14-267T Report[18]) at 4. More generally, as illustrated in Appendix A, Plaintiff alleges the newly issued '439 Patent against nearly all of the previously accused products without any corresponding pleading to support the inference that the accused product is still being manufactured or used.

---

[18]     Available at *https://www.gao.gov/assets/670/663998.pdf*

### 4. *Any takings claim corresponding to a dismissed patent infringement claim.*

This Court's March 31, 2014 Order (Dkt. 38) stayed the takings claims in this action. That same Order recognized that, as embodied in Plaintiff's Original Complaint and November 22, 2013 More Definite Statement, Plaintiff's takings claims appeared to be duplicative of Plaintiff's patent infringement claims. Dkt. 38. This observation applies equally to Plaintiff's Fifth Amended Complaint, which pleads each takings claim entirely in terms of the "private and personal property subject matter as outlined in Plaintiff's [patents]." *See, e.g.*, ¶87. In other words, as plead, the takings allegations are identical to the infringement allegations. Accordingly, for any and all allegations of patent infringement that this Court deems fit to dismiss, the government respectfully requests dismissal of the corresponding takings claims. *See Shillinger v. United States*, 155 U.S. 163, 169 (1894).

## VI.  CONCLUSION

For the reasons discussed above, it is respectfully requested that the above-identified allegations of Plaintiff's Fifth Amended Complaint be dismissed.

Respectfully submitted,

CHAD A. READLER
Acting Assistant Attorney General

GARY L. HAUSKEN
Director

October 20, 2017

NICHOLAS J. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC  20530
*Nicholas.J.Kim@usdoj.gov*

T: (202) 616-8116
F: (202) 307-0345

**APPENDIX A**
**Inventory of Plaintiff's Infringement Allegations**

Shaded cells denote apparently new allegations since February 12, 2016 Complaint (Dkt. 68)

| ¶¶ | Plaintiff's Identification | Patents & Claims | Gov't Entities | Third Parties |
|---|---|---|---|---|
| 96-97 | LG G5 Smartphone | 439:22; 990:18,118,12,28,25,30,22,20 | DHS S&T; DOD | LG Electronics |
| 101-102 | LG V10 Smartphone | 439:22; 990:18,118,12,28,25,30,22,20 | DHS S&T; DOD | LG Electronics |
| 106-107 | Apple iPhone/iPad camera biosensor for facial HR monitor | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | MIT Media Lab Apple Inc. |
| 111-112 | Apple iPhone 5, 5c, 5s, 6, 6 Plus, iPad + Apple Watch | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | Apple Inc. |
| 116-117 | Apple iPhone/iPad + Apple Watch + August Smart Lock | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | August Home Apple Inc. |
| 121-122 | Apple iPhone/iPad + Watch + HomeKit + August Smart Lock | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | August Home Apple Inc. |
| 126-127 | Apple iPhone/iPad + Apple Watch + MyFord Mobile App | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | Ford Apple Inc. |
| 131-132 | Samsung Galaxy s6 | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | Samsung |
| 136-137 | Samsung Galaxy s6 + Gear S2 Smartwatch | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | Samsung |
| 141-142 | Samsung Galaxy s6 + Gear S2 Smartwatch + Yale Assure Lock | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | Assa Abloy Samsung |
| 146-147 | Samsung Galaxy s6 + SmartThings Hub + Yale Assure Lock | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | Assa Abloy Samsung |
| 151-152 | Samsung Galaxy s6 + Gear S2 + VW Car-Net e-Remote | 439:22; 990:18,118,12,28,25,30,22,20 | DHS | Volkswagen Samsung |

| ¶¶ | Plaintiff's Identification | Patents & Claims | Gov't Entities | Third Parties |
|---|---|---|---|---|
| 156-157 | Panasonic Toughbook + K-Max Helicopter (AACUS) | 439:13;<br>990:18,118,12,28,25,20,32,30;<br>891:44,55,45,48,53,52 | USN (ONR) | Panasonic Lockheed Martin |
| 166-167 | Panasonic Toughbook + Galaxy s6 + Passport Sys BCU | 497:1,2,4;<br>752:34,37;<br>439:13,14;<br>990:119,29,18,118,12,28,25,20,124,32,30 | DHS (DNDO) | Passport Systems Panasonic Samsung |
| 171-172 | iPad + Boeing MH-6 Little Bird (AACUS) | 439:13,<br>990:18,118,12,28,25,20,32,30;<br>891:23,55,27,31,30 | USN (ONR) | Apple Boeing |
| 179-180 | Navy Marine Corps Intranet (NMCI) Network | 439:13,14,15;<br>752:34;<br>990:18,118,12,28,25,20,32,30,124 | USN, USMC | Apple Samsung |
| 184-185 | Smartphone-Based Rapid Diagnostic Tests | 439:13;<br>990:18,118,12,28,25,20,32,30 | NSF | UH Cullen College; Apple Inc. |
| 189-190 | Variable NODE+Oxa + Apple iPhone | 439:13;<br>990:18,118,12,28,25,20,32,30 | DHS; NASA (Ames) | Variable, Inc. Apple Inc. Genel Systems Inc. |
| 194-195 | COINS nano-Embedded Sensors for Smartphones | 439:13;<br>990:18,118,12,28,25,20,32,30 | NSF | Apple Inc. UC Berkeley, Stanford, Caltech, UC Merced |
| 199-200 | Samsung Galaxy s6 BioPhone | 439:13;<br>990:18,118,12,28,25,20,32,30 | NSF | Samsung, MIT Media Lab |
| 204-205 | Biotouch Samsung Galaxy s6 + Biotouch System / Nett Warrior | 439:13,17;<br>990:119,18,118,12,28,25,20,32,30,17,108,124 | Army (ECBC, CERDEC) DOD (DTRA) | Samsung iSense LLC |
| 209-210 | Positive ID/Firefly DX + Samsung Galaxy s6 | 439:13;<br>990:18,12,28,25,20,32,30 | DHS | Samsung PositiveID |

| ¶¶ | Plaintiff's Identification | Patents & Claims | Gov't Entities | Third Parties |
|---|---|---|---|---|
| 214-215 | Cell-All Synkera MikroKera Ultra | 497:1,2,4; 752:34,37; 439:14,20; 990:119,29,18,12,28,25,20,118, 17,92,124 | DHS, NASA (Ames) | Apple, Samsung, Qualcomm, LG, Synkera Technologies |
| 219-220 | 14-A Kromek D3S-ID: Standalone Isotope ID | 439:14; 752:34; 990:18,118,12,28,25,20,124 | DARPA | Kromek Group plc Samsung |
| 225-226 | MIT NFC Galaxy s6 Smartphone Sensor | 439:15; 990:18,12,28,25,20,118 | Army (ARL, ARO) | Samsung MIT |
| 230-231 | SiN-VAPOR/Smartphone System | 439:16; 990:118,18,122,124,108 | Navy (NRL) | Google, Samsung, Apple |
| 235 | iPhone Biodetector Smartphone | 439:16; 990:118,18,122,124,108 | NSF | University of Illinois |
| 236 | FLIR identiFINDER R300 | 439:16; 990:118,18,122,124,108 | DOD (DTRA) | FLIR Systems |
| 240-241 | VOCket System/Nett Warrior System | 439:17; 990:119,17,18,124,108 | Army (ECBC) | Samsung |
| 245-246 | GammaPix for Android Smartphones (Galaxy s6) | 439:17; 990:119,17,18,124,108 | DARPA | Image Insight Samsung |
| 250 | MultriRae Pro Multi-Threat Radiation and Chemical Detector | 439:17; 990:119,79,124,78 | EPA, FEMA, USMC | RAE Systems |
| 251 | EAGER: Mobile-Phone Based Signle Molecule Imaging of DNA | 439:19; 990:118,92,25,12,124,99 | NSF | UCLA Apple Inc |
| 255-256 | INSPIRE Track 2: PHeNoM - Public Health Nanotechnology and Mobility | 439:19; 990:118,92,25,12,124,99 | NSF | Cornell University Apple Inc |
| 270-271 | PFI:BIC Human-Centered Smart-Integration of Mobile Imaging & Sensing | 439:19; 990:118,92,25,12,124,99 | NSF | UCLA Apple Inc |
| 275-276 | EFRI-BioFlex: Cellphone-Based Digital Immunoassay Platform | 439:19; 990:118,92,25,12,124,99 | NSF | UCLA Apple Inc |

| ¶¶ | Plaintiff's Identification | Patents & Claims | Gov't Entities | Third Parties |
|---|---|---|---|---|
| 280-281 | Multimode Smartphone Biosensor | 439:19; 990:118,92,25,12,124,99 | NSF | University of Illinois Apple Inc |
| 285-286 | EAGER: Lab-in-a-Smartphone | 439:19; 990:118,92,25,12,124,99 | NSF | University of Illinois Apple Inc |
| 290-291 | PFI-BIC "Pathtracker: Smartphone-based Mobile Infection Disease Detection" | 439:19; 990:118,92,25,12,124,99 | NSF | University of Illinois Apple Inc |
| 295-296 | I-Corps: Ultra-Sensitive Lateral Flow Reporters | 439:19; 990:118,92,25,12,124,99 | NSF | University of Houston Apple Inc |
| 300-301 | Smartphone (iPhone) Microscope | 439:19; 990:118,17,92,25,12,124,99 | Army (ARO), NSF, NIH, Navy (ONR) | Holmic LLC Apple Inc |
| 305-306 | Smartphone (iPhone) Biosensor "Cradle" | 439:19; 990:118,17,92,25,12,124,99 | NSF | University of Illinois Apple Inc |
| 310-311 | AOptix Stratus MX Peripheral for iPhone | 439:19; 990:118,17,92,25,12,124,99 | DOD | Aoptix Technologies CACI Int'l Apple Inc |
| 315-316 | PositiveID - Boeing/M-Band + iPhone | 439:19; 990:118,17,92,25,12,124,99 | DHS | PositiveID Corporation Boeing Apple Inc |
| 320-321 | Samsung Galaxy s6 "Microscope" Smartphone | 439:19; 990:118,17,92,25,12,124,99 | Army (ECBC) | Holmic LLC Samsung |
| 325-326 | Kromek D3S-NET (iPhone) | 439:20; 752:34; 990:118,18,92,25,124 | DARPA | Kromek Group plc Apple Inc |
| 330-331 | Biomeme "two3" Mobile Thermocycler: Apple iPhone | 439:20; 752:34; 990:118,18,92,25,124 | Army (ECBC) | Biomeme Apple Inc |
| 335-336 | Smartphone-operated "LAMP box": Apple iPhone | 439:20; 752:34; 990:118,18,92,25,124 | DOE (NNSA), NIH (NIAID) | Sandia National Laboratory Lockheed Martin Apple Inc |

| ¶¶ | Plaintiff's Identification | Patents & Claims | Gov't Entities | Third Parties |
|---|---|---|---|---|
| 340-341 | Alluviam LLC HazMasterG3: Apple iPhone | 439:20; 752:34; 990:118,18,92,25,124 | GSA, Army (JBC), HDS | Alluviam LLC Apple Inc |
| 345-346 | FePhone Point-of-Care: Apple iPhone | 439:20; 752:34; 990:118,18,92,25,124 | DOD (Defense Health Program) | Cornell University Apple Inc |
| 350-351 | NutriPhone Lab-on-a-Chip: Apple iPhone | 439:20; 752:34; 990:118,18,92,25,124 | NSF | Cornell University Apple Inc |
| 355-356 | FeverPhone: Apple iPhone | 439:20; 752:34; 990:118,18,92,25,124 | NIH | Cornell University Apple Inc |
| 360-361 | Solar Thermal PCR Test: Apple iPhone | 439:20; 752:34; 990:118,18,92,25,124 | NIH | Cornell University Apple Inc |
| 365-366 | Lab-on-a-Drone: Apple iPhone | 439:20; 752:34; 990:118,18,92,25,124 | NIH | AI Biosciences Inc Apple Inc |
| 370-371 | Eureka Aerospace High Powered Electromagnetic System (HPEMS) | 891:11, 19, 15, 21 | Air Force, USMC | Eureka Aerospace Boeing |
| 375-376 | Laser Weapons System (LaWS) | 891:11, 19, 15, 21 | Navy (NSWC) | Kratos Defense & Security Solutions |
| 380-381 | ATHENA (Advanced Test High Energy Asset) | 891:11, 19, 15, 21 | Navy, USAF, Army | Lockheed Martin |
| 385-386 | CHAMP (Counter-Electronics High-Powered Microwave Advanced Missile Project) | 891:11, 19, 15, 21 | USAF | Raytheon Ktech, Boeing |
| 390-391 | Northrop Grumman X-47B UCAS Control Display Unit (CDU) | 891:11,19,15,27,21 | Navy (NAVAIR) | Northrop Grumman |
| 395-396 | Oshkosh Defense "TerraMax" Autonomous Unmanned Group Vehicle (UGV) | 891:44,45,27 | USMC | Oshkosh Defense |

| ¶¶ | Plaintiff's Identification | Patents & Claims | Gov't Entities | Third Parties |
|---|---|---|---|---|
| 400-401 | DreamHammer "Ballista" Software for Computer, Tablet, Smartphone | 891:44,45,27 | DOD, Navy | DreamHammer Inc. Lockheed Martin Samsung Apple Inc |
| 405-406 | iControl M-Lock | 990:35,39,44,125,135,148; 752:36 | DHS | iControl Inc. |

## APPENDIX B
## Production Log for NSF Documents

Award letters and proposals are <mark>highlighted</mark>

### Award #0425914:

| BATES | FILENAME |
|-------|----------|
| NSF_0000001 | Grant_Letter_0425914.pdf |
| NSF_0000061 | Annual Report submitted 4.15.08 Redacted_Redacted.pdf |
| NSF_0000294 | Annual Report submitted 4.23.07 Redacted_Redacted.pdf |
| NSF_0000464 | Annual Report submitted 4.25.05 Redacted_Redacted.pdf |
| NSF_0000594 | Annual Report submitted 5.11.09 Redacted_Redacted.pdf |
| NSF_0000835 | Annual Report submitted 5.12.06 Redacted_Redacted.pdf |
| NSF_0000999 | Annual Report submitted 9.2.10 Redacted_Redacted.pdf |
| NSF_0001318 | Annual Report submitted 9.2.11 Redacted_Redacted.pdf |
| NSF_0001694 | Correspondence - Redacted_Redacted.pdf |
| NSF_0001738 | Final Report submitted 11.21.12 Redacted_Redacted.pdf |
| NSF_0001834 | Grant Information Redacted_Redacted.pdf |
| NSF_0001895 | Grant Information.pdf |
| NSF_0003659 | 0425914.pdf |
| NSF_0003713 | Grant_Letter_0425914_Redacted.pdf |
| NSF_0003748 | 0425914.pdf |
| NSF_0003794 | 0425914 Proposal - Redacted.pdf |

### Award #0832819:

| BATES | FILENAME |
|-------|----------|
| NSF_0000006 | Project Outcomes Report.pdf |
| NSF_0000999 | Annual Report submitted 9.2.10 Redacted_Redacted.pdf |
| NSF_0001318 | Annual Report submitted 9.2.11 Redacted_Redacted.pdf |
| NSF_0001738 | Final Report submitted 11.21.12 Redacted_Redacted.pdf |
| NSF_0001956 | Annual Report submitted 4.7.11 Redacted_Redacted.pdf |
| NSF_0002331 | Annual Report submitted 4.13.10 Redacted_Redacted.pdf |
| NSF_0002649 | Annual Report submitted 4.13.12 Redacted_Redacted.pdf |
| NSF_0003057 | Annual Report submitted 6.3.13.pdf |
| NSF_0003063 | Correspondence excluding Panelist Letters.pdf |
| NSF_0003106 | Final Project Report submitted 11.21.14.pdf |
| NSF_0003112 | Grant Information Redacted_Redacted.pdf |
| NSF_0003215 | Notification - Request Redacted_Redacted.pdf |
| NSF_0003251 | Project Outcomes Report.pdf |
| NSF_0003662 | 0832819.pdf |
| NSF_0003709 | DAD_Award_0832819_Redacted.pdf |
| NSF_0003750 | 0832819.pdf |

## Award #1029585:

| BATES | FILENAME |
|-------|----------|
| NSF_0000025 | Grant_Letter_1029585 - Amendment 1.pdf |
| NSF_0000027 | Grant_Letter_1029585 - Amendment 4.pdf |
| NSF_0000029 | Grant_Letter_1029585 - Amendment 5.pdf |
| NSF_0000031 | Grant_Letter_1029585 - Amendment 6.pdf |
| NSF_0000033 | Grant_Letter_1029585 - Amendment 7.pdf |
| NSF_0003270 | Annual Report submitted 7.25.14 Redacted_Redacted.pdf |
| NSF_0003284 | Annual Report submitted 7.31.13 Redacted_Redacted.pdf |
| NSF_0003298 | Annual Report submitted 8.6.12 Redacted_Redacted.pdf |
| NSF_0003317 | Annual Report submitted 9.5.11 Redacted_Redacted.pdf |
| NSF_0003332 | Award_Budget_1029585 - Amendment 2 Redacted_Redacted.pdf |
| NSF_0003333 | Award_Budget_1029585 - Amendment 3 Redacted_Redacted.pdf |
| NSF_0003334 | Award_Budget_1029585 Redacted_Redacted.pdf |
| NSF_0003335 | Final Project Report submitted 11.29.15 Redacted_Redacted.pdf |
| NSF_0003351 | Grant_Letter_1029585 - Amendment 1 Redacted_Redacted.pdf |
| NSF_0003353 | Grant_Letter_1029585 - Amendment 2 Redacted_Redacted.pdf |
| NSF_0003356 | Grant_Letter_1029585 - Amendment 3 Redacted_Redacted.pdf |
| NSF_0003359 | Grant_Letter_1029585 - Amendment 4 Redacted_Redacted.pdf |
| NSF_0003361 | Grant_Letter_1029585 - Amendment 5 Redacted_Redacted.pdf |
| NSF_0003363 | Grant_Letter_1029585 - Amendment 6 Redacted_Redacted.pdf |
| NSF_0003365 | Grant_Letter_1029585 - Amendment 7 Redacted_Redacted.pdf |
| NSF_0003367 | Grant_Letter_1029585 Redacted_Redacted.pdf |
| NSF_0003371 | Notification_for_Proposal_1029585 #1 Redacted_Redacted.pdf |
| NSF_0003376 | Notification_for_Proposal_1029585 #2.pdf |
| NSF_0003377 | Notification_for_Proposal_1029585 #3 Redacted_Redacted.pdf |
| NSF_0003390 | Notification_for_Proposal_1029585 #4.pdf |
| NSF_0003686 | 1029585.pdf |
| NSF_0003718 | Grant_Letter_1029585_Redacted.pdf |
| NSF_0003771 | 1029585.pdf |
| NSF_0004253 | 1029585 Proposal - Redacted.pdf |

## Award #1264377:

| BATES | FILENAME |
|-------|----------|
| NSF_0000035 | Correspondence excluding Panelist Letters.pdf |
| NSF_0003689 | 1264377.pdf |
| NSF_0003722 | Grant_Letter_1264377_Redacted.pdf |
| NSF_0003772 | 1264377.pdf |
| NSF_0004440 | 1264377 Proposal - Redacted.pdf |
| NSF_0004895 | Annual Report submitted 4.1.15 Redacted_Redacted.pdf |
| NSF_0004904 | Annual Report submitted 5.5.14 Redacted_Redacted.pdf |
| NSF_0004912 | Annual Report submitted 5.23.16 Redacted_Redacted.pdf |
| NSF_0004921 | Award_Budget_1264377 Redacted_Redacted.pdf |
| NSF_0004922 | Correspondence excluding Panelist Letters.pdf |
| NSF_0004948 | Grant_Letter_1264377 Redacted_Redacted.pdf |
| NSF_0004951 | Notification_for_Proposal_1264377.pdf |

**Award #1332275:**

| BATES | FILENAME |
|---|---|
| NSF_0003392 | Annual Report submitted 7.12.15 Redacted_Redacted.pdf |
| NSF_0003404 | Annual Report submitted 7.19.14 Redacted_Redacted.pdf |
| NSF_0003417 | Annual Report submitted 8.1.16 Redacted_Redacted.pdf |
| NSF_0003429 | Award_Budget_1332275 Redacted_Redacted.pdf |
| NSF_0003430 | Correspondence excluding Panelist Letters.pdf |
| NSF_0003449 | Grant_Letter_1332275 Redacted_Redacted.pdf |
| NSF_0003691 | 1332275.pdf |
| NSF_0003725 | Grant_Letter_1332275_Redacted.pdf |
| NSF_0003774 | 1332275.pdf |
| NSF_0004484 | 1332275 Proposal - Redacted.pdf |
| NSF_0005168 | Annual Report submitted 8.1.16 Download #1.pdf |

**Award #1343058:**

| BATES | FILENAME |
|---|---|
| NSF_0003452 | Annual Report submitted 7.10.15 Redacted_Redacted.pdf |
| NSF_0003466 | Annual Report submitted 7.28.16 Redacted_Redacted.pdf |
| NSF_0003484 | Award_Budget_1343058 Redacted_Redacted.pdf |
| NSF_0003485 | Correspondence excluding Reviewer Letters.pdf |
| NSF_0003501 | Grant_Letter_1343058 Redacted_Redacted.pdf |
| NSF_0003694 | 1343058.pdf |
| NSF_0003728 | Grant_Letter_1343058_Redacted.pdf |
| NSF_0003777 | 1343058.pdf |
| NSF_0004539 | 1343058 Proposal - Redacted.pdf |

**Award #1444240:**

| BATES | FILENAME |
|---|---|
| NSF_0003505 | Annual Report submitted 8.16.15 Redacted_Redacted.pdf |
| NSF_0003516 | Award_Budget_1444240 Redacted_Redacted.pdf |
| NSF_0003517 | Correspondence.pdf |
| NSF_0003537 | Final Report submitted 12.21.16 Redacted_Redacted.pdf |
| NSF_0003547 | Grant_Letter_1444240 Redacted_Redacted.pdf |
| NSF_0003550 | Project Outcomes Report modified 12.21.16.pdf |
| NSF_0003697 | 1444240.pdf |
| NSF_0003732 | Grant_Letter_1444240_Redacted.pdf |
| NSF_0003780 | 1444240.pdf |
| NSF_0004627 | 1444240 Proposal - Redacted.pdf |

**Award #1447893:**

| BATES | FILENAME |
|---|---|
| NSF_0003700 | 1447893.pdf |
| NSF_0003735 | Grant_Letter_1447893_Redacted.pdf |
| NSF_0003784 | 1447893.pdf |
| NSF_0004658 | 1447893 Proposal - Redacted.pdf |
| NSF_0004952 | Annual Report submitted 8.17.15 Redacted_Redacted.pdf |
| NSF_0004959 | Annual Report submitted 8.27.16 Redacted_Redacted.pdf |
| NSF_0004966 | Award_Budget_1447893 Redacted_Redacted.pdf |
| NSF_0004967 | Correspondence Redacted_Redacted.pdf |
| NSF_0004977 | Grant_Letter_1447893 Redacted_Redacted.pdf |
| NSF_0004980 | Notification - Grantee Approved No Cost Extension.pdf |

**Award #1450552:**

| BATES | FILENAME |
|---|---|
| NSF_0003554 | Award_Budget_1450552 Redacted_Redacted.pdf |
| NSF_0003555 | Correspondence.pdf |
| NSF_0003631 | Final Report submitted 2.22.16 Redacted_Redacted.pdf |
| NSF_0003637 | Grant_Letter_1450552 Redacted_Redacted.pdf |
| NSF_0003640 | Notification_for_Proposal_1450552 Redaction_Redacted.pdf |
| NSF_0003643 | Project Outcomes Report modified 2.22.16.pdf |
| NSF_0003702 | 1450552.pdf |
| NSF_0003738 | Grant_Letter_1450552_Redacted.pdf |
| NSF_0003786 | 1450552.pdf |
| NSF_0004696 | 1450552 Proposal - Redacted.pdf |

**Award #1533983:**

| BATES | FILENAME |
|---|---|
| NSF_0003646 | Award_Budget_1533983 - Amendment 1 Redacted_Redacted.pdf |
| NSF_0003647 | Award_Budget_1533983 Redacted_Redacted.pdf |
| NSF_0003648 | Correspondence excluding Panelist Letters.pdf |
| NSF_0003653 | Grant_Letter_1533983 - Amendment 1 Redacted_Redacted.pdf |
| NSF_0003656 | Grant_Letter_1533983 Redacted_Redacted.pdf |
| NSF_0003704 | 1533983.pdf |
| NSF_0003741 | Grant_Letter_1533983_Redacted.pdf |
| NSF_0003789 | 1533983.pdf |
| NSF_0004725 | 1533983 Proposal - Redacted.pdf |
| NSF_0005013 | 1533983 Annual Report submitted 8.27.16 NSF Proposed Redactions_Redacted.pdf |

**Award #1534126:**

| BATES | FILENAME |
|-------|----------|
| NSF_0003707 | 1534126.pdf |
| NSF_0003744 | Grant_Letter_1534126_Redacted.pdf |
| NSF_0003792 | 1534126.pdf |
| NSF_0004792 | 1534126 Proposal - Redacted.pdf |
| NSF_0004981 | Annual Report submitted 8.17.16 Redacted_Redacted.pdf |
| NSF_0004991 | Award_Budget_1534126 - Redacted_Redacted.pdf |
| NSF_0004992 | Correspondence excluding Panelist Letters.pdf |
| NSF_0005000 | Grant_Letter_1534126 - Redacted_Redacted.pdf |
| NSF_0005004 | Notification_for_Proposal_1534126 Redacted_Redacted.pdf |

## CERTIFICATE OF SERVICE

I hereby certify that a true copy of the foregoing "DEFENDANT THE UNITED

STATES' MOTION FOR PARTIAL DISMISSAL OF PLAINTIFF'S FIFTH AMENDED

COMPLAINT" was sent on October 20, 2017 via Federal Express, to:

Larry Golden
740 Woodruff Road
#1102
Greenville, SC 29607

Plaintiff, *pro se*

Nicholas J. Kim
Department of Justice