IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LARRY GOLDEN,

           Plaintiff, *pro se*,

    v.

THE UNITED STATES,

           Defendant.

No. 13-307 C

Senior Judge Eric G. Bruggink

## DEFENDANT UNITED STATES' MOTION TO DISMISS PLAINTIFF'S TAKINGS CLAIMS

JOSEPH H. HUNT
Assistant Attorney General

GARY L. HAUSKEN
Director

NICHOLAS J. KIM
Trial Attorney

March 18, 2019

*Attorneys for the United States*

RECEIVED FROM NIGHT BOX

MAR 18 2019

OFFICE OF THE CLERK
U.S. COURT OF FEDERAL CLAIMS

## TABLE OF CONTENTS

I.     INTRODUCTION ............................................................................................. 1

II.    BACKGROUND ............................................................................................. 1

    A.     Procedural Background Relating to Plaintiff's Takings Claims ............................ 1

    B.     Takings Claims of Plaintiff's Final Complaint ........................................................ 3

        1.     Alleged Jurisdiction: The Tucker Act ........................................................ 4

        2.     Alleged Property: The Subject Matter of Plaintiff's Patents. ............... 4

        3.     Alleged Use: "Access, Disclosure, Manufacture, Development or Use, By Or For The Government." ............................................................. 5

III.   LEGAL PRINCIPLES ................................................................................. 5

    A.     Failure to State a Claim Under RCFC 12(b)(6) ...................................................... 5

    B.     Lack of Jurisdiction Under RCFC 12(b)(1). ........................................................... 6

    C.     *Pro Se* Plaintiffs Are Not Excused From Failures In Pleading ............................. 7

    D.     This Court's Tucker Act Jurisdiction Excludes Claims of Patent Infringement. ... 7

IV.    ARGUMENT ................................................................................................... 9

    A.     "Access, disclosure, manufacture, development or use" of unclaimed subject matter disclosed in a patent cannot constitute a Constitutional taking. .................. 9

    B.     "Access [or] disclosure" of subject matter disclosed in a patent is not a plausible taking ....................................................................................................................... 9

    C.     "Manufacture, development or use" of subject matter claimed in a patent "by or for the Government" constitutes patent infringement, not a Constitutional taking of private property ...................................................................................................... 11

    D.     Plaintiff cannot create jurisdiction by labelling patent infringement allegations as a Constitutional taking. .......................................................................................... 12

V.     CONCLUSION ............................................................................................. 13

ATTACHMENT 1

## TABLE OF AUTHORITIES

**Page**

**Cases**

*Ashcroft v. Iqbal,*
    556 U.S. 678 (2009)....................................................................................5

*AstraZeneca Pharm. PL v. Apotex Corp.,*
    669 F.3d 1370 (Fed. Cir. 2012)..................................................................6

*Bell v. Hood,*
    327 U.S. 678 (1946)...............................................................................6, 12

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007)...............................................................................6, 10

*Bonito Boats, Inc. v. Thunder Craft Boats, Inc.,*
    489 U.S. 141 (1989) ..................................................................................10

*Crozier v. Fried. Krupp Aktiengesellschaft,*
    224 U.S. 290 (1912)....................................................................................8

*Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.,*
    535 U.S. 722 (2002) ..................................................................................10

*Forest Glen Props., LLC v. United States,*
    79 Fed. Cl. 669 (2007) ...............................................................................6

*Haines v. Kerner,*
    404 U.S. 519 (1972)....................................................................................7

*Hardie v. United States,*
    367 F.3d 1228 (Fed. Cir. 2004)..................................................................6

*Henke v. United States,*
    60 F.3d 795 (Fed. Cir. 1995)......................................................................7

*Illinois v. United States,*
    15 Cl. Ct. 399 (1988) .................................................................................1

*Johnson & Johnston Associates Inc. v. R.E. Serv. Co.,*
    285 F.3d 1046 (Fed. Cir. 2002)..................................................................9

*J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.,*
    534 U.S. 124 (2001) ..................................................................................10

**Page**

*Keehn v. United States,*
    110 Fed. Cl. 306 (2013) ................................................................................8

*Kewanee Oil Co. v. Bicron Corp.,*
    416 U.S. 470 (1974))); ...............................................................................10

*Lamson v. United States,*
    101 Fed. Cl. 280 (2011) ................................................................................8

*McNutt v. Gen. Motors Acceptance Corp,*
    298 U.S. 178 (1936) .....................................................................................7

*Pfaff v. Wells Elecs., Inc.,*
    525 U.S. 55 (1998) .....................................................................................10

*Phillips v. AWH Corp.,*
    415 F.3d 1303 (Fed. Cir. 2005) .....................................................................9

*Reynolds v. Army & Air Force Exch. Serv.,*
    846 F.2d 746 (Fed. Cir. 1988) .......................................................................7

*Schillinger v. United States,*
    155 U.S. 163 (1894) .........................................................................1, 7, , 128

*Sheridan v. United States,*
    120 Fed. Cl. 127 (Fed. Cl. 2015) ...................................................................6

*Sioux Honey Ass'n v. Hartford Fire Ins. Co.,*
    672 F.3d 1041 (Fed. Cir. 2012) .....................................................................6

*Suttles v. Office of Pers. Mgmt.,*
    No. 98-3183, 1998 WL 537763 (Fed. Cir. Aug. 10, 1998) .............................6

*Terry v. United States,*
    103 Fed. Cl. 645 (2012) ................................................................................6

*United States v. Dubilier Condenser Corp.,*
    289 U.S. 178 (1933) ...................................................................................10

*Zoltek v. United States,*
    442 F.3d 1345 (Fed. Cir. 2006) .....................................................................8

*Zoltek Corp. v. United States,*
    672 F.3d 1309 (Fed. Cir. 2012) .............................................................2, 8, 12

**Page**

**Constitutional Provisions & Statutes**

U.S. Const. amend. V ..................................................................................................7, 8, 11

28 U.S.C. § 1491(a)(1) ................................................................................................. *passim*

28 U.S.C. § 1498(a) ..................................................................................................... *passim*

35 U.S.C. § 154(a)(1) ...................................................................................................11, 12

**Rules**

RCFC 8(a)(2) .......................................................................................................................5

RCFC 12(a)(4) .....................................................................................................................1

RCFC 12(b)(1) ............................................................................................................1, 6, 12

RCFC 12(b)(6) ............................................................................................................ *passim*

## I.      INTRODUCTION

Defendant The United States (the Government) moves to dismiss Plaintiff's various Constitutional takings claims, as pled in Plaintiff's Final Amended Complaint (Dkt. 120, "Final Complaint"), under RCFC 12(b)(6) for failure to state a claim for which relief can be granted.  In the alternative, the Government moves to dismiss Plaintiff's takings claims for lack of jurisdiction under RCFC 12(b)(1), because Plaintiff's takings claims actually allege patent infringement, which falls outside of the Court of Federal Claim's Tucker Act jurisdiction as codified at 28 U.S.C. § 1491(a)(1).  In accordance with RCFC 12(a)(4), this motion is being filed in lieu of answering Plaintiff's takings claims. *See Illinois v. United States*, 15 Cl. Ct. 399, 413 (1988).

As the Supreme Court made clear in *Schillinger v. United States*, 155 U.S. 163 (1894), allegations of patent infringement sound in tort, and are therefore outside of this Court's Tucker Act jurisdiction. *Schillinger*, 155 U.S. at 169; 28 U.S.C. § 1491(a)(1).  In this case, although Plaintiff attempts to allege a "taking" of his patents under the Tucker Act, these allegations are essentially duplicative of Plaintiff's multitude of patent infringement allegations brought under Section 1498.  The United States has not waived its sovereign immunity to be sued under the Tucker Act for patent infringement, so Plaintiff's takings allegations fail to state a claim for which relief can be granted.  Alternatively, this Court lacks jurisdiction under the Tucker Act to adjudicate Plaintiff's takings claims as they are pled in the Final Complaint.

## II.     BACKGROUND

### A.      Procedural Background Relating to Plaintiff's Takings Claims

Plaintiff's original complaint alleged infringement of a single patent, U.S. Pat. No. RE43,990, but did not allege a taking.  Dkt. 1.  On August 15, 2013, Plaintiff filed a "Notice of Supplement," which added additional allegations of infringement of U.S. Pat. No. RE43,990,

which the Court understood to be an amended complaint.  Dkt. 6; Dkt. 21 at 1.  After the

Government moved for a more definite statement (Dkt. 9), the Court subsequently ordered

Plaintiff to file a Second Amended Complaint.  Dkt. 21 at 2.

Plaintiff's Second Amended Complaint (Dkt. 24) added allegations of infringement of six

additional patents and further alleged that the Government had "taken the subject matter, scope,

technology rationale, devices schematics, process, methods, procedures and systems of what is

now Golden's patents . . . for public use without just compensation."  Dkt. 24 at 46.  The Second

Amended Complaint alleged this Court had jurisdiction over his takings claims under 28 U.S.C.

§ 1491(a).  *Id.*  On May 31, 2014, the Court stayed Plaintiff's takings claims pending

determination of liability for the Government's alleged patent infringement.  Dkt. 38 (citing

*Zoltek Corp. v. United States*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc)); *see also* Dkt. 51

(maintaining stay of takings claims).  As Plaintiff continued to add additional patent

infringement allegations to this case, Plaintiff also alleged a taking of the subject matter of his

patents.  *See* Dkt. 68 at 48 ("COUNT II  /  Taking of subject matter described in and covered by

[Plaintiff's patents] under 28 U.S.C. § 1491").

Responding to Plaintiff's repeated attempts to further supplement his Complaint (*see,*

*e.g.*, Dkt. 82, 107, 108), the Court permitted Plaintiff to amend his complaint "one final time."

Dkt. 116 at 2; May 24, 2017 Hearing Tr. at 15:19–21 ("You will then file a new complaint and

we're going to label it fifth and final complaint, so there's no ambiguity about this. It's going to

be the last one.").  The Court intended this document to contain "all of [Plaintiff's] concerns, all

of your charges against the Government in one document."  May 24, 2017 Hearing Tr. at 14:21–

24.  Plaintiff's Final Complaint (Dkt. 120), the subject of this Motion, was filed on August 10,

2017.  After Plaintiff attempted to appeal this Court's grant of the Government's motion to

dismiss portions of Plaintiff's Final Complaint (Dkts. 130, 131, 132, 141), on November 9, 2018,

the Court lifted the stay on Plaintiff's takings claims and permitted the Government to file this

Motion to dismiss Plaintiff's takings claims.  Dkt. 149 at 3–4; *see also* Dkt. 151.

### B.      Takings Claims of Plaintiff's Final Complaint

After numerous prior supplements and amendments,[1] the 178-page Final Complaint is

unnecessarily prolix, replete with ineffectual, formulaic boilerplate, and difficult to

comprehend.  Based on the Government's best understanding, Plaintiff's takings claims include a

generic "Count I" (Final Compl. ¶¶87–88) and dozens of separate takings allegations, each

labelled as "Count I" and naming a particular project.  *See* Attachment 1 (attaching a chart listing

separate takings counts and their corresponding projects).  Other than naming particular products

and parties, each separate takings allegation is nearly identical in content and form to the generic

takings count.[2]  Oddly, Plaintiff's takings allegations allege "permanent physical invasion" of

Plaintiff's patent rights.[3]

In addition to takings allegations, the Final Complaint also contains parallel generic and

separate claims of patent infringement under 28 U.S.C. 1498(a), all labelled as "Count II."  *See*

---

[1]    *See* Dkts. 1 (Original Complaint), 6 (Notice of Supplement), 11 (Motion to Amend Complaint), 14 (Motion to Supplement Complaint), 24 (More Definite Statement), 29 (Motion to Amend Pleadings), 68 (Amended Complaint), 82 (Motion for Entry of Devices Supplied to the Government), 107 (Chart Motion), 108 (Complaint Motion).

[2]    *Compare* Final Compl. ¶¶87–88 *with* ¶¶93–95, 98–100, 103–105, 108–110, 113–115, 118–120, 123–125, 128–130, 133–135, 138–140, 143–145, 148–150, 153–155, 158–160, 168–170, 173–175, 181–183, 186–188, 191–193, 196–198, 201–203, 206–208, 211–213, 216–218, 221–223, 227–229, 232–234, 237–239, 242–244, 247–249, 252–254, 257–259, 262–264, 267–269, 272–274, 277–279, 282–284, 287–289, 292–294, 297–299, 302–304, 307–309, 312–314, 317–319, 322–324, 327–329, 332–334, 337–339, 342–344, 347–349, 352–354, 357–359, 362–364, 367–369, 372–374, 377–379, 382–384, 387–389, 392–394, 397–399, and 402–404.

[3]    *See, e.g.*, ¶87.  Because patent rights are intangible products of statute, there is no legal basis for Plaintiff to allege a physical taking.  This repeated language should be sufficient reason on its own to dismiss Plaintiff's various takings allegations for failure to state a claim for which relief can be granted.

¶¶91–92 (generic Count II), Attachment 1 (listing dozens of separate allegations of patent infringement under Section 1498).

### 1.   Alleged Jurisdiction: The Tucker Act.

Plaintiff contends that his takings claims are brought pursuant to this Court's jurisdiction under the Tucker Act. Final Compl. ¶ 3 ("This is a claim pursuant to 28 U.S.C. §§ 1491(a) and 1498(a)").[4]

### 2.   Alleged Property: The Subject Matter of Plaintiff's Patents.

In each of Plaintiff's takings claims, the only alleged property being taken is the "subject matter as outlined in the . . . specifications and patent claims [of Plaintiff's patents] that are significantly the same or equivalent to the claimed inventions of the Plaintiff." *See* Final Compl. ¶87.[5] No trade secrets or other property, tangible or intangible, are alleged to have been taken. *See also* March 19, 2014 Tr. at 11:11 ("No, ma'am, no trade secrets.").

In other words, the subject property of Plaintiff's takings allegations is limited to, and defined entirely by, the specification and claims of Plaintiff's patents.

---

[4]   *See also id.* ¶¶95, 100, 105, 110, 115, 120, 125, 130, 135, 140, 145, 150, 155, 160, 170, 175, 183, 188, 193, 198, 203, 208, 213, 218, 223, 229, 234, 239, 244, 249, 254, 259, 264, 269, 274, 279, 284, 289, 294, 299, 304, 309, 314, 319, 324, 329, 334, 339, 344, 349, 354, 359, 364, 369, 374, 379, 384, 389, 394, 399, and 404 (in each separate takings count, seeking compensation under "Section 1491")

[5]   Plaintiff uses the same operative language (*i.e.*, "subject matter as outlined in the Plaintiff's . . . [patent] specification and patent claims") in the Final Complaint's separate takings allegations. *See* Final Compl. ¶¶93, 98, 103, 108, 113, 118, 123, 128, 133, 138, 143, 148, 153, 158, 168, 173, 181, 186, 191, 196, 201, 206, 211, 216, 221, 227, 232, 237, 242, 247, 252, 257, 262, 267, 272, 277, 282, 287, 292, 297, 302, 307, 312, 317, 322, 327, 332, 337, 342, 347, 352, 357, 362, 367, 372, 377, 382, 387, 392, 397, and 402; *see also id.* ¶¶94, 99, 104, etc. ("Plaintiff's personal property subject matter as described in and covered by the Plaintiff's . . . patents")

–4–

### 3. Alleged Use: "Access, Disclosure, Manufacture, Development or Use, By Or For The Government."

Plaintiff generally alleges that the subject matter of his patents has been "used for the benefit of the public." Final Compl. ¶87. Somewhat incongruously, Plaintiff appears to allege that this use "result[ed] in the Government's manufacture and development of products, devices, methods, and systems that are significantly the same or equivalent to the claimed inventions of the Plaintiff." *Id.* Plaintiff also alleges that his competitive edge was destroyed "by virtue of the access, disclosure, manufacture, development or use, by or for the Government and its third party awardees," without specifying the subject of this sentence (*i.e.*, the "what"). Final Compl. ¶87. Moreover, Plaintiff generally alleges that the Government's use was "without authorization and consent" of the Plaintiff, thereby mirroring Section 1498(a)'s "without license of the owner" language. *See, e.g.*, Final Compl. ¶¶ 87, 94, 99, etc. Each of the Final Complaint's separate takings claims follows the same three-paragraph template, leading to opaque, formulaic recitations throughout the Final Complaint. *Compare* Final Compl. ¶¶93–95 *with* ¶¶98–100 *with* ¶¶103–105, etc.

Taking Plaintiff's allegations together and liberally construing the Final Complaint, at best, Plaintiff's Final Complaint can be understood to allege a taking based on "access, disclosure, manufacture, development or use, by or for the Government" of the subject matter disclosed and claimed in Plaintiff's patents.

## III. LEGAL PRINCIPLES

### A. Failure to State a Claim Under RCFC 12(b)(6)

To state a claim for relief, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." RCFC 8(a)(2). This Rule requires "plausibility," not just "possibility." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (parallel

citations omitted) ("Where a complaint pleads facts that are "merely consistent with" a defendant's liability, it "stops short of the line between possibility and plausibility of 'entitlement to relief.'"). Moreover, "while Rule 8 does not require 'detailed factual allegations,' it does require more than 'labels and conclusions.'" *Sioux Honey Ass'n v. Hartford Fire Ins. Co.*, 672 F.3d 1041, 1062 (Fed. Cir. 2012) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). And while all well-pled factual allegations are taken as true and the court indulges in all reasonable inferences in favor of the non-movant, the Court is "not bound to accept as true a legal conclusion couched as a factual allegation." *Terry v. United States*, 103 Fed. Cl. 645, 652 (2012); *Twombly*, 550 U.S. at 555.

### B.      Lack of Jurisdiction Under RCFC 12(b)(1).

Under RCFC 12(b)(1), subject-matter jurisdiction must be established by the plaintiff before a court proceeds to the merits of the action. *Sheridan v. United States*, 120 Fed. Cl. 127, 129 (Fed. Cl. 2015) (citing *Hardie v. United States*, 367 F.3d 1228, 1290 (Fed. Cir. 2004)). When ruling on a motion to dismiss for lack of subject matter jurisdiction, the Court ordinarily accepts as true all of the non-movant's factual allegations. *Forest Glen Props., LLC v. United States*, 79 Fed. Cl. 669, 676 (2007).

But jurisdiction is not supported by allegations that are frivolous or merely conclusory. *Id.* at 676 n.17; *AstraZeneca Pharm. PL v. Apotex Corp.*, 669 F.3d 1370, 1376 (Fed. Cir. 2012) ("accepting as true" only "non-conclusory allegations of fact"); *Suttles v. Office of Pers. Mgmt.*, No. 98-3183, 1998 WL 537763, at *1 (Fed. Cir. Aug. 10, 1998) (requiring non-frivolous, non-conclusory allegations of specified fact); *see also Bell v. Hood*, 327 U.S. 678, 682–83 (1946) (directing courts to exercise their jurisdiction to adjudicate cases except 1) where the alleged claim under the Constitution or federal statute clearly appears immaterial and made solely for the purpose of obtaining jurisdiction; or 2) where such a claim is wholly insubstantial and frivolous).

**C.      *Pro Se* Plaintiffs Are Not Excused From Failures In Pleading.**

*Pro se* plaintiffs' pleadings are held to a less stringent standard than pleadings drafted by counsel. *Haines v. Kerner*, 404 U.S. 519, 520 (1972).  On the other hand, while the Court may excuse ambiguities in a *pro se* plaintiff's complaint, the Court "does not excuse [its] failures." *Henke v. United States*, 60 F.3d 795, 799 (Fed. Cir. 1995).  Additionally, a *pro se* plaintiff must still allege facts essential to show jurisdiction. *McNutt v. Gen. Motors Acceptance Corp.*, 298 U.S. 178, 189 (1936); *Reynolds v. Army & Air Force Exch. Serv.*, 846 F.2d 746, 748 (Fed. Cir. 1988).

**D.      This Court's Tucker Act Jurisdiction Excludes Claims of Patent Infringement.**

Long ago, the Supreme Court recognized that the Tucker Act does not confer jurisdiction over a claim that the Government used a patented invention without authorization, even when that claim is framed as a Fifth Amendment takings claim. *See Schillinger*, 153 U.S. at 168. (Indeed, this is exactly what Plaintiff's Final Complaint attempts to do.)  In *Schillinger*, the patent owner sued a contractor (Cook) who contracted with the Architect of the Capitol to construct a concrete pavement. *Schillinger*, 153 U.S. at 164.  The patent owner alleged that Cook used its patented method to build the pavement without first acquiring the right to do so. *Id.*  As such, the Court understood the patent owner to allege "wrongful appropriation by the government" of its patented method. *Id.* at 169.

The Court began with the principle that "[t]he United States cannot be sued in their courts without their consent, and in granting such consent Congress has an absolute discretion to specify the cases and contingencies in which the liability of the Government is submitted to the courts for judicial determination." *Id.* at 166.  Applying this principle of strict construction, the Court recognized that the Tucker Act's waiver of sovereign immunity did not extend to cases

– 7 –

"sounding in tort." *Id.* at 167 (quoting an 1887 version of the Tucker Act), 169 ("[C]ases

sounding in tort are not cognizable in the Court of Claims"). The Court recognized "[t]hat this

action is one sounding in tort is clear" and that "[t]he transaction as stated in the petition . . . was

tort pure and simple." *Id.* at 169. Consequently, the *Schillinger* Court held that patent

infringement claims fall outside of the Tucker Act because they sound in tort. *Schillinger*, 155

U.S. at 168–69.

In response to *Schillinger* and similar cases, Congress enacted the Act of 1910, the

predecessor to Section 1498, which "add[ed] to the right to sue the United States in the Court of

Claims" even without the presence of a contract. *See Crozier v. Fried. Krupp Aktiengesellschaft*,

224 U.S. 290, 304 (1912); *see also Zoltek v. United States*, 442 F.3d 1345, 1350–53 (Fed. Cir.

2006), *vacated on other grounds*, 672 F.3d 1309 (Fed. Cir. 2012) (en banc) (finding that the

Supreme Court "acknowledged Congressional recognition that the Court of Claims lacked

Tucker Act jurisdiction over infringement under a takings theory").[6]

Accordingly, Section 1498 represents a calibrated extension of this Court's subject matter

jurisdiction beyond that permitted by the Tucker Act. By the same token, because Section 1498

was intended to add to this Court's jurisdiction, it does not modify the Court's existing Tucker

Act jurisdiction, which *Schillinger* held did not permit suits for patent infringement. Therefore,

patent infringement allegations simply cannot be brought under the Tucker Act.

---

[6]     The legislative history of the Act of 1910 confirms that the statute "augmented" the Court
of Claims' Tucker Act jurisdiction. *Zoltek*, 442 F.3d at 1351 (citing H.R. Rep. No. 61-1288 at 3
(1910)); *See also Keehn v. United States*, 110 Fed. Cl. 306, 335 (2013) ("It is 28 U.S.C.
§ 1498(a), not the Fifth Amendment to the United States Constitution, that provides the waiver
of sovereign immunity that enables a plaintiff to file suit against the government for patent
infringement.") (citing *Lamson v. United States*, 101 Fed. Cl. 280, 284–85 (2011) (discussing
*Schillinger* and *Zoltek* in dismissing for lack of jurisdiction a Fifth Amendment takings claim in
connection with the alleged use of the plaintiff's patent by federal "grantees")).

## IV.    ARGUMENT

Breaking down Plaintiff's formulaic recitations of takings based on "access, disclosure, manufacture, development or use" of the subject matter described and claimed in Plaintiff's patents, it becomes apparent that most of Plaintiff's allegations simply fail to state a plausible takings claim due to the nature of the patent grant.  And after subtracting those aspects of Plaintiff's claims, what remains of Plaintiff's takings count is a claim for patent infringement.

### A.    "Access, disclosure, manufacture, development or use" of unclaimed subject matter disclosed in a patent cannot constitute a Constitutional taking.

Starting with Plaintiff's takings allegations as they pertain to unclaimed subject matter disclosed in his patents, these allegations fail because Plaintiff has no property right in subject matter he disclosed, but chose not to claim.  "It is a bedrock principle of patent law that the claims of a patent define the invention to which the patentee is entitled the right to exclude." *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (internal quotations omitted).  As a corollary, "when a patent drafter discloses but declines to claim subject matter . . . this action dedicates that unclaimed subject matter to the public." *Johnson & Johnston Associates Inc. v. R.E. Serv. Co.*, 285 F.3d 1046, 1054 (Fed. Cir. 2002).

Due to the nature of the patent grant, Plaintiff has no property right in unclaimed subject matter disclosed in his patents.  And without a valid property interest, there is no plausible allegation of a taking.  Therefore, Plaintiff's takings allegations must be dismissed under RCFC 12(b)(6) to the extent they allege a taking of unclaimed, disclosed subject matter of Plaintiff's patents.

### B.    "Access [or] disclosure" of subject matter disclosed in a patent is not a plausible taking.

Turning next to Plaintiff's takings allegations based on "access" or "disclosure" of subject matter disclosed (regardless of whether claimed) in his patents, these bare allegations fail

to state a plausible takings claim for several reasons.  To start, despite Plaintiff's voluminous Final Complaint, "access" and "disclosure" are invoked almost exclusively within Plaintiff's formulaic and conclusory "by virtue of" phrase.  As previously noted, Plaintiff does not allege any other property interest other than his patents (*e.g.*, trade secrets), let alone sufficiently allege an appropriation of such other property, so the Final Complaint's bare recitation of "access" and "disclosure" are rendered even less meaningful.  And Plaintiff's allegation that the taken property is the subject matter disclosed and claimed by his patents belies any suggestion of trade secrets in the Final Complaint.  *See Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 731 (2002) (observing an inventor's choice either "to patent an invention and disclose it to the public" or to "exploit it in secret").  At base, providing "access" and "disclosure" to claimed subject matter are part and parcel of the patent bargain that requires patent inventors to publicly disclose their inventions in significant detail.[7]

As such, Plaintiff's allegations based on "access" and "disclosure" exemplify the types of conclusory legal allegations and labels that are insufficient to allege a plausible claim for relief. *See Twombly*, 550 U.S. at 555.  Accordingly, these allegations fail to plausibly allege a taking of patented subject matter.

---

[7]     *See, e.g., Festo Corp. v. Shoketsu Kinzoku Kogyo Kabushiki Co.*, 535 U.S. 722, 736 (2002) ("[E]xclusive patent rights are given in exchange for disclosing the invention to the public."); *J.E.M. Ag Supply, Inc. v. Pioneer Hi-Bred Int'l, Inc.*, 534 U.S. 124, 142 (2001) ("The disclosure required by the Patent Act is 'the quid pro quo of the right to exclude.'" (quoting *Kewanee Oil Co. v. Bicron Corp.*, 416 U.S. 470, 484 (1974))); *Pfaff v. Wells Elecs., Inc.*, 525 U.S. 55, 63 (1998) ("[T]he patent system represents a carefully crafted bargain that encourages both the creation and the public disclosure of new and useful advances in technology, in return for an exclusive monopoly for a limited period of time."); *Bonito Boats, Inc. v. Thunder Craft Boats, Inc.*, 489 U.S. 141, 151 (1989) ("'In consideration of [the invention's] disclosure and the consequent benefit to the community, the patent is granted.'") (quoting *United States v. Dubilier Condenser Corp.*, 289 U.S. 178, 186 (1933))).

C.   **"Manufacture, development or use" of subject matter claimed in a patent "by or for the Government" constitutes patent infringement, not a Constitutional taking of private property.**

The balance of Plaintiff's takings claim—an alleged taking based on "manufacture, development or use" by the Government of subject matter claimed in Plaintiff's patents—is a quintessential claim of patent infringement.  These takings claims fail to state a plausible takings claim under the Tucker Act, because they are merely patent infringement allegations "labelled" as takings claims.  Put another way, because Plaintiff's takings claims are, in substance, allegations of patent infringement, this Court lacks jurisdiction, at least under the Tucker Act, to adjudicate those allegations.

To start, plaintiff's repeated invocation of "manufacture . . . by or for the Government" and "use . . . by or for the Government" match *ipsis verbis* the language of Section 1498, which provides a cause of action against the government whenever a patented invention "is used or manufactured by or for the United States without license."  28 U.S.C. § 1498(a).  "Manufacture" and "use" also fall within the scope of the scope of a patent holder's rights under 35 U.S.C. § 154(a)(1).

Regarding Plaintiff's claims based on "development," this term is not defined, but the Final Complaint frequently uses this term in the same context as "manufacture."  *See, e.g.*, Final Compl. ¶¶87 ("the Government's manufacture and development of products . . . that are significantly the same or equivalent to the claimed inventions of the Plaintiff").  Additionally, the Final Complaint repeatedly alleges "development" as a basis for liability for patent infringement under Section 1498.  *See, e.g.*, Final Compl. ¶¶102, 107, 112, 117, 122, 127, etc.  And because all of Plaintiff's allegations revolve around a taking of the subject matter of his patents, the Final Complaint's generic use of "development" falls within the ambit of the patent rights granted

– 11 –

under 35 U.S.C. § 154(a)(1).  *See Zoltek*, 672 F.3d at 1323 (Fed. Cir. 2012) ("The liability of the United States under § 1498 is thus linked to the scope of the patent holder's rights as granted by the patent grant in title 35 U.S.C. section 154(a)(1).").  Thus, as pled in the Final Complaint, Plaintiff's takings allegations of "development . . . by or for the Government" mirror the same acts of "development" alleged to constitute patent infringement under Section 1498.

Therefore, after stripping out implausible claims and conclusory labels, Plaintiff's takings claims actually allege patent infringement by the Government.  Under *Schillinger*, such claims cannot be brought under the Tucker Act.  As such, under RCFC 12(b)(6), Plaintiff fails to state a plausible takings claim for which relief can be granted under the Court's Tucker Act jurisdiction.

### D.     Plaintiff cannot create jurisdiction by labelling patent infringement allegations as a Constitutional taking.

As discussed above, Plaintiff's takings claims are indistinguishable from his allegations of patent infringement under Section 1498.  As such, Plaintiff's claim under the Fifth Amendment is clearly immaterial to the substance of his actual allegation of patent infringement, and made solely for the purpose of maintaining duplicate claims for relief in this case.  Moreover, given the formulaic and conclusory pleading of takings claims (*e.g.*, alleging a "physical invasion"), and the pleading of essentially identical patent infringement claims in the same case, Plaintiff's takings claims are at least wholly insubstantial and possibly frivolous.  Under *Bell v. Hood* and in view of the clear import of *Schillinger*, the Court can decline to exercise its jurisdiction to entertain these myriad takings claims.  *Bell*, 327 U.S. at 682–83.

Therefore, dismissal of Plaintiff's takings claims for lack of jurisdiction is appropriate.

## V.    CONCLUSION

For the above reasons, the Government respectfully requests that Plaintiff's takings claims be dismissed under RCFC 12(b)(6) for failing to state a claim for which relief can be granted, or in the alternative, under RCFC 12(b)(1), because the Court lacks jurisdiction under the Tucker Act to adjudicate allegations that are, in substance, claims of patent infringement.

Respectfully submitted,

JOSEPH H. HUNT
Assistant Attorney General

GARY L. HAUSKEN
Director

March 18, 2019

NICHOLAS J. KIM
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC  20530
*Nicholas.J.Kim@usdoj.gov*
T: (202) 616-8116
F: (202) 307-0345

*Attorneys for the United States*

**ATTACHMENT 1**

The following chart lists the separate (*i.e.*, not generic) Constitutional takings ("Count I") and Section 1498 patent infringement allegations ("Count II") in the Final Complaint.

| Count I (Taking) ¶¶ | Project Label | Count II (1498) ¶¶ |
|---|---|---|
| 93–95 | LG Electronics G5 Smartphone | 96–97 |
| 98–100 | LG Electronics V10 Smartphone | 101–102 |
| 103–105 | Apple iPhone/iPad camera biosensor for facial HR monitor | 106–107 |
| 108–110 | Apple iPhone 5, 5c, 5s, 6, 6 Plus, iPad + Apple Watch | 111–112 |
| 113–115 | Apple iPhone/iPad + Apple Watch + August Smart Lock | 116–117 |
| 118–120 | Apple iPhone/iPad + Watch + HomeKit + August Smart Lock | 121–122 |
| 123–125 | Apple iPhone/iPad + Apple Watch + MyFord Mobile App | 126–127 |
| 128–130 | Samsung Galaxy s6 | 131–132 |
| 133–135 | Samsung Galaxy s6 + Gear S2 Smartwatch | 136–137 |
| 138–140 | Samsung Galaxy s6 + Gear S2 Smartwatch + Yale Assure Lock | 141–142 |
| 143–145 | Samsung Galaxy s6 + SmartThings Hub + Yale Assure Lock | 146–147 |
| 148–150 | Samsung Galaxy s6 + Gear S2  + VW Car-Net e-Remote | 151–152 |
| 153–155 | Panasonic Toughbook + K-Max Helicopter (AACUS) | 156–157 |
| 158–160 | Panasonic Toughbook + Galaxy s6 + Passport Sys BCU | 161–167 |
| 168–170 | iPad + Boeing MH-6 Little Bird (AACUS) | 171–172 |
| 173–175 | Navy Marine Corps Intranet (NMCI) Network | 176–180 |
| 181–183 | Smartphone-Based Rapid Diagnostic Tests | 184–185 |
| 186–188 | Variable NODE+Oxa + Apple iPhone | 189–190 |

– 1 –

| Count I (Taking) ¶¶ | Project Label | Count II (1498) ¶¶ |
|---|---|---|
| 191–193 | COINS nano-Embedded Sensors for Smartphones | 194–195 |
| 196–198 | Samsung Galaxy s6 BioPhone | 199–200 |
| 201–203 | Biotouch Samsung Galaxy s6 + Biotouch System / Nett Warrior | 204–205 |
| 206–208 | Positive ID/Firefly DX + Samsung Galaxy s6 | 209–210 |
| 211–213 | Cell-All Synkera MikroKera Ultra | 214–215 |
| 216–218 | 14-A Kromek D3S-ID: Standalone Isotope ID | 219–220 |
| 221–223 | MIT NFC Galaxy s6 Smartphone Sensor | 224–226 |
| 227–229 | SiN-VAPOR/Smartphone System | 230–231 |
| 232–234 | iPhone Biodetector Smartphone | 235–236 |
| 237–239 | FLIR identiFINDER R300 | 240–241 |
| 242–244 | VOCket System/Nett Warrior System | 245–246 |
| 247–249 | GammaPix for Android Smartphones (Galaxy s6) | 250–251 |
| 252–254 | MultriRae Pro Multi-Threat Radiation and Chemical Detector | 255–256 |
| 257–259 | EAGER: Mobile-Phone Based Single Molecule Imaging of DNA | 260–261 |
| 262–264 | INSPIRE Track 2: PHeNoM - Public Health Nanotechnology and Mobility | 265–266 |
| 267–269 | PFI:BIC Human-Centered Smart-Integration of Mobile Imaging & Sensing | 270–271 |
| 272–274 | EFRI-BioFlex: Cellphone-Based Digital Immunoassay Platform | 275–276 |
| 277–279 | Multimode Smartphone Biosensor | 280–281 |
| 282–284 | EAGER: Lab-in-a-Smartphone | 285–286 |

| Count I (Taking) ¶¶ | Project Label | Count II (1498) ¶¶ |
|---|---|---|
| 287–289 | PFI-BIC "Pathtracker: Smatphone-based Mobile Infection Disease Detection" | 290–291 |
| 292–294 | I-Corps: Ultra-Sensitive Lateral Flow Reporters | 295–296 |
| 297–299 | Smartphone (iPhone) Microscope | 300–301 |
| 302–304 | Smartphone (iPhone ) Biosensor "Cradle" | 305–306 |
| 307–309 | AOptix Stratus MX Peripheral for iPhone | 310–311 |
| 312–314 | PositiveID - Boeing/M-Band + iPhone | 315–316 |
| 317–319 | Samsung Galaxy s6 "Microscope" Smartphone | 320–321 |
| 322–324 | Kromek D3S-NET (iPhone) | 325–326 |
| 327–329 | Biomeme "two3" Mobile Thermocycler: Apple iPhone | 330–331 |
| 332–334 | Smartphone-operated "LAMP box": Apple iPhone | 335–336 |
| 337–339 | Alluviam LLC HazMasterG3: Apple iPhone | 340–341 |
| 342–344 | FePhone Point-of-Care: Apple iPhone | 345–346 |
| 347–349 | NutriPhone Lab-on-a-Chip: Apple iPhone | 350–351 |
| 352–354 | FeverPhone: Apple iPhone | 355–356 |
| 357–359 | Solar Thermal PCR Test: Apple iPhone | 360–361 |
| 362–364 | Lab-on-a-Drone: Apple iPhone | 365–366 |
| 367–369 | Eureka Aerospace High Powered Electromagnetic System (HPEMS) | 370–371 |
| 372–374 | Laser Weapons System (LaWS) | 375–376 |
| 377–379 | ATHENA (Advanced Test High Energy Asset) | 380–381 |
| 382–384 | CHAMP (Counter-Electronics High-Powered Microwave Advanced Missile Project) | 385–386 |

| Count I (Taking) ¶¶ | Project Label | Count II (1498) ¶¶ |
|---|---|---|
| 387–389 | Northrop Grumman X-47B UCAS Control Display Unit (CDU) | 390–391 |
| 392–394 | Oshkosh Defense Autonomous Unmanned Ground Vehicle (UGV) "TerraMax" | 395–396 |
| 397–399 | DreamHammer's "Ballista" Software for Computer, Tablet or Smartphone | 400–401 |
| 402–404 | iControl Inc. "M-Lock" | 405–406 |

## **CERTIFICATE OF SERVICE**

I hereby certify that a true copy of the foregoing "DEFENDANT UNITED STATES'

MOTION TO DISMISS PLAINTIFF'S TAKINGS CLAIMS" was deposited with Federal

Express on March 18, 2019, postage pre-paid, to:

Larry Golden
740 Woodruff Road
#1102
Greenville, SC 29607

Plaintiff, *pro se*

_____

Nicholas J. Kim
Department of Justice