## IN THE UNITED STATES COURT OF FEDERAL CLAIMS

LARRY GOLDEN,

                Plaintiff, *pro se*,

    v.

THE UNITED STATES,

                Defendant.

No. 13-307 C

Senior Judge Eric G. Bruggink

## DEFENDANT THE UNITED STATES' MOTION TO STRIKE PLAINTIFF'S "CORRECTED INFRINGEMENT CONTENTIONS" AND TO DISMISS PLAINTIFF'S SIXTH AMENDED COMPLAINT [DKT. 195]

BRIAN M. BOYNTON
Acting Assistant Attorney General

GARY L. HAUSKEN
Director

GRANT D. JOHNSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC  20530

*Attorneys for the Defendant,*
*The United States*

September 1, 2021

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     FACTUAL BACKGROUND .......................................................................... 3

     A.    Plaintiff's August 18 "Corrected Preliminary Infringement Contentions"............ 4

     B.    Plaintiff's August 23 "Corrected Preliminary Infringement Contentions—Patent Rule 4(E)" ........................................................................................................ 6

III.    LEGAL STANDARDS FOR INFRINGEMENT CONTENTIONS................................ 7

IV.    ARGUMENT .................................................................................................. 9

     A.    Plaintiff provides no claim charts for his newly added August 23 allegations against fifty-six "Chipsets" and "CPUs." ............... 9

     B.    Plaintiff's "Corrected Preliminary Infringement Contentions" fail to identify where the claimed sensors and detectors of hazardous substances are allegedly found in any accused product model. ......................................................... 10

          1.    Plaintiff's new claim charts for the '287 patent cut-and-paste boilerplate argument that fails to identify any claimed sensor or detector in any accused product model............................................................................. 11

          2.    Plaintiff's new claim charts for the '189 patent cite only to his own patents' specifications and an IPR proceeding, and fail to identify any claimed sensor or detector in the accused products themselves. .............. 14

          3.    Plaintiff's new claim charts for the '497 patent, the '752 patent, and the '439 patent relying on the Genel Systems "NODE+" sensor fail to identify or allege any Government use or manufacture of any accused product. .. 15

          4.    Plaintiff's references to the 2011 CELL-ALL project prototypes are unrelated to any of the products Plaintiff accuses of infringement. ......... 17

          5.    Plaintiff's references to third-party software applications in the preamble sections of his claim charts do not allege or evidence any Government use or manufacture. ....................................................................................... 18

     C.    Plaintiff's "Corrected Preliminary Infringement Contentions" fail to identify how any accused product model allegedly performs the claimed locking/unlocking functionality in response to detection of hazardous substances........................... 19

          1.    Plaintiff's new claim charts for the '287 patent cut-and-paste boilerplate argument that fails to identify any claimed locking mechanism in any accused product model............................................................................. 20

2.      Plaintiff's new claim charts for the '189 and '439 patent only argue that the accused products are "capable of" the claimed functionality and fail to identify any allegedly infringing component in the accused products. .... 21

3.      Plaintiff's new claim charts for the '497 and '752 patents fail to identify any allegedly infringing component in the accused products that performs locking/unlocking in response to detection of a hazardous substance...... 22

D.      Plaintiff's "Corrected Preliminary Infringement Contentions" are thoroughly non-compliant with the requirements of Patent Rule 4............................................... 24

V.      CONCLUSION.............................................................................................................. 25

## TABLE OF AUTHORITIES

**Cases**

*CANVS Corp. v. United States*, 110 Fed. Cl. 19 (2013) ................................................. 9

*Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526 (E.D. Tex. 2005) ................................. 8

*Demodulation, Inc. v. United States*, 126 Fed. Cl. 499 (2016) ........................................... 9

*Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 1517920 (N.D. Cal. Apr. 2, 2015) ............................. 8

*High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551 (Fed. Cir. 1995) ........ 8

*Iris Corp. Berhad v. United States*, 2019 WL 2317143 (Fed. Cl. May 8, 2019)............................ 8

*Iris Corp. Berhad v. United States*, 84 Fed. Cl. 12 (2008) ............................................ 8

*O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355 (Fed. Cir. 2006) ................... 8

*Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316 (Fed. Cir. 2001).................... 8, 20

*Uni-Splendor Corp. v. Remington Designs, LLC*, 2017 WL 4786085 (C.D. Cal. Aug. 10, 2017). 8

**Statutes**

28 U.S.C. § 1498............................................................................................................ 16

35 U.S.C. § 102.............................................................................................................. 7

**Rules**

PRCFC 4 ............................................................................................................. passim

RCFC 37 ............................................................................................................... 1, 9

## I.   INTRODUCTION

Pursuant to the Court's July 29, 2021 Order (Dkt. 239), Rule 37 of the Rules of the U.S. Court of Federal Claims (RCFC), and the Court's Patent Rules (PRCFC), Defendant the United States (the Government) hereby moves to strike Plaintiff's "Corrected Preliminary Infringement Contentions" and to dismiss Plaintiff's Sixth Amended Complaint (Dkt. 195).

Plaintiff originally filed this patent infringement suit on May 1, 2013.  Dkt. 1.  Yet as the Court catalogued in its July 29 Order, this case never progressed past the pleadings stage until 2021.  *See* Dkt. 239 at 2–4 ("Procedural History").  Instead, Plaintiff amended his complaint no less than six times, with each successive amended complaint asserting a new selection of claims from his patent family against various Government programs and third-party manufacturers.  *Id.*

Now, the case has finally progressed to the "outset of the claim construction phase." *Id.* at 5.  Accordingly, pursuant to the Court's Patent Rule 4, Plaintiff was required for the first time to set forth his infringement theories in contentions.  *Id.*  Yet after eight years of litigation, the Court found Plaintiff's contentions to be "fatally deficient."[1]  *Id.* at 6; *see also id.* at 10 ("We have examined the extensive charts submitted and are satisfied that the charts utterly fail to identify any infringing structures, components, or functionality in the accused product models that could serve as sensors or detectors."), 11 ("Nothing in this narrative identifies a locking feature or explains how it operates in a way that infringes.").

The Court granted Plaintiff one more chance "to resubmit his infringement contentions in their entirety." *Id.* at 12.  However, the Court warned that "[i]f plaintiff fails to file a claims

---

[1]     As the Court's July 29 Order noted, Plaintiffs' contentions are directed to "smartphone and smartwatch models" that were released no earlier than 2016, Dkt. 239 at 11, three years after Plaintiff filed his original May 1, 2013 complaint in this case.

chart which complies with Rule 4, the court will assume that it cannot be done and that the complaint should be dismissed." *Id.*

Plaintiff submitted nearly 2,000 pages of "corrected" contentions on August 18 and 23. *See* A0001–A0664 (Apple); A0665–A1326 (Samsung); A1327–A1988 (LG); A1989–A1996 (August 23 contentions).  Yet while these materials are voluminous, Plaintiff's "corrected" contentions are also fatally deficient and fail to comply with PRCFC 4.

Nowhere in the nearly 2,000 pages submitted by Plaintiff is a plausible theory of Government infringement of any one of the twenty-five asserted patent claims, for any one of the twenty-eight accused Apple, Samsung, or LG product models.  Instead, Plaintiff copies and pastes the same boilerplate arguments across different asserted claims, different accused products, and different accused manufacturers.  And instead of identifying "infringing structures, components, or functionality in the accused product models" as requested by the Court, Dkt. 239 at 10, Plaintiff's contentions cite to his own characterizations of his alleged inventions, to his own patents' specifications (and an *inter partes* review proceeding for an unasserted patent), and to a variety of articles about third-party software and hardware that are unrelated to the Government and/or the accused products.

Further, Plaintiff now seeks to *expand* his case.  On August 23, Plaintiff asserted for the first time that fifty-six different "Chipsets" and "CPUs" each individually infringe his twenty-five asserted patent claims as well.  Plaintiff provided no claim charts for any of these fifty-six new accused products, much less any plausible explanation or theory for how any of these accused microprocessors could possibly meet each limitation of any of the asserted claims.

Plaintiff cannot set forth a plausible infringement theory for any of the accused products, and cannot prepare infringement contentions that comply with PRCFC 4.  Plaintiff's "corrected" contentions should be struck, and Plaintiff's Sixth Amended Complaint should be dismissed.

## II.    FACTUAL BACKGROUND

The Court previously detailed the eight-year history of this case in its July 29, 2021 Order.  *See* Dkt. 239 at 2–5.  As the Court noted, the operative complaint in this matter is Plaintiff's Sixth Amended Complaint (Dkt. 195), Dkt. 239 at 4, which alleges that devices developed as part of a former Department of Homeland Security (DHS) initiative known as "CELL-ALL" infringe five of Plaintiff's patents[2], *see* Dkt. 227 at 2–3 (citing Dkt. 195 at 7–8); Dkt. 215 at 6 ("It appears that Mr. Golden asserts that the Cell-All initiative resulted in the manufacture of a variety of devices that infringe his patents.").  On April 20, 2021, Plaintiff served preliminary infringement contentions accusing ten Apple products, nine Samsung products, and nine LG products of each infringing twenty-five independent claims of his five asserted patents.  *See* Dkt. 239 at 4.

In its July 29 Order, the Court granted the Government's motion to strike Plaintiff's April 20, 2021 infringement contentions.  *Id.* at 12.  Specifically, the Court noted that "each of plaintiff's asserted patents . . . claim sensors, nevertheless, plaintiff's claim chart does not identify sensors in the accused products."  *Id.* at 8–9; *see also id.* at 10 ("We have examined the extensive charts submitted and are satisfied that the charts utterly fail to identify any infringing structures, components, or functionality in the accused product models that could serve as

---

[2] Plaintiff's five asserted patents are:  (1) U.S. Patent No. 7,385,497 ("the '497 patent"); (2) U.S. Patent No. 8,106,752 ("the '752 patent"); (3) U.S. Patent No. 9,096,189 ("the '189 patent"); (4) U.S. Patent No. 9,589,439 ("the '439 patent"); and (5) U.S. Patent No. 10,163,287 ("the '287 patent").

sensors or detectors.)" *Id.* at 10.  The Court also noted that "[e]ach of the asserted patents . . . also require a locking mechanism that is not identified in the accused products." *Id.* at 10–11; *see also id.* at 11 ("[T]he claim limitations fail to identify in the accused devices the limitations of a: 1) sensor; and 2) a locking mechanism.").  And the Court further found that "plaintiff's invocation of the doctrine of equivalents does not salvage his claim charts, which do not specify how each element of each identified claim is alleged to be literally present or present under the doctrine of equivalents, much less how the asserted claims are performed in substantially the same function in substantially the same way to obtain substantially the same results.").  *Id.* at 12.

Accordingly, finding that Plaintiff's infringement contention failed to comply with the requirements of PRCFC 4, the Court granted the Government's motion to strike.  *Id.*  The Court did not dismiss the case, but "permit[ted] plaintiff to resubmit his infringement contentions in their entirety on or before August 27, 2021." *Id.*  The Court noted, however, that "[i]f plaintiff fails to file a claims chart which complies with Rule 4, the court will assume that it cannot be done and that the complaint should be dismissed." *Id.*

### A.  Plaintiff's August 18 "Corrected Preliminary Infringement Contentions"

Plaintiff served his "Corrected Preliminary Infringement Contentions" ("Corrected Contentions") on August 18, 2021.  *See* A0001–A1988.  Plaintiff's Corrected Contentions included cover pleadings for each of Apple, Samsung, and LG, respectively.  *See* A0001–A0008 (Apple); A0665–A0671 (Samsung); A1327–A1333 (LG).  Each of the three cover pleadings is substantially identical, and contains:

1. A section entitled "GUIDE FOR REVIEWING PLAINTIFF'S INFRINGEMENT CHARTS."  A0001–A0002 (Apple); A0665– A0666 (Samsung); A1327–A1328 (LG).  This section of each cover pleading consists of:  (a) an apparent excerpt from a 2011 DHS publication describing the goals of the CELL-ALL project; (b) two excerpts from the specifications of Plaintiff's asserted patents; and (c) an excerpt from a 2015 decision issued by the

Patent Trial & Appeal Board (PTAB) in an *inter partes* review (IPR) of one of Plaintiff's patents (U.S. Patent No. RE43,990) that is no longer at issue in the case.  *See* Dkt. 130 at 24–36 (dismissing various infringement allegations asserting '990 reissue patent claims); Dkt. 151 at 2 (dismissing infringement allegations asserting '990 reissue patent dependent claims).

2.  A section entitled "PRODUCT DESIGN FOR THE DEFENDANT'S CELL-ALL PROJECT."  A0003–A0004 (Apple); A0667–A0668 (Samsung); A1329–A1330 (LG).  This section of each cover pleading consists of:  (a) an apparent excerpt from a 2010 DHS publication describing an "objective" of the CELL-ALL project; (b) two excerpts from a 2011 presentation on the CELL-ALL project, *see* Dkt. 195 (Sixth Amended Complaint) at 69, illustrating two prototype devices that were demonstrated in 2011, *id.* at 71; and (c) a stock image of a smartwatch next to various hyperlinks to third-party articles discussing concepts for smartwatches.

3.  A section entitled "PLAINTIFF'S CENTRAL PROCESSING UNIT."  A0004–A0006 (Apple); A0668–A0670 (Samsung); A1330–A1332 (LG).  This section of each cover pleading contains Plaintiff's description of a "central processing unit," and then lists various "chipsets" and "CPUs" allegedly found in the Apple, Samsung, and LG devices Plaintiff accuses of infringement.

Plaintiff's Corrected Contentions also included claim charts for each of Apple, Samsung, and LG.  The Apple claim charts are six hundred and fifty-six (656) pages long, *see* A0009–A0664, and the Samsung and LG claim charts are each six hundred and fifty-five (655) pages long, *see* A0672–A1326 (Samsung); A1334–A1988 (LG).   While these materials are voluminous, the lengths of the Apple, Samsung and LG claim charts are near-identical because the content of each of Plaintiff's August 18 claim charts is largely the same across each of the accused third-party manufacturers (Apple, Samsung, and LG).  *See generally id.*

Each of the claim charts in Plaintiff's Corrected Contentions (for Apple, Samsung, and LG respectively) is broken up into three sub-sections, each addressing a different group of the respective manufacturer's accused product models (arranged in chronological order):

| Claim Chart Pages | Apple (A0009–A0664) | Samsung (A0672–A1326) | LG (A1334–A1988) |
|---|---|---|---|
| pp. 4–219 | "Apple Inc.'s iPhone 7 & iPhone 8 Series and Apple Watch Series 3" (A0012–A0227) | "Samsung Galaxy Note 8 & Galaxy S8 Series and Samsung Gear S3 Classic Series" (A0675–A0890) | "LG Electronics LG V30 & LG G6 Series and LG Watch Sport Series" (A1337–A1552) |
| pp. 222–437 | "Apple iPhone SE & iPhone XS Series and Apple Watch Series 4" (A0230–A445) | "Samsung Galaxy S9 & Galaxy S10 Series and Samsung Galaxy Watch Active 2 Series" (A0893–A1108) | "LG Electronics LG G7 & LG G8 Series and LG Watch Style Series" (A1555–A1770) |
| pp. 441–655 (Samsung, LG) / –656 (Apple) | "Apple iPhone 11 & iPhone 12 Series and Apple Watch Series 5 & 6" (A0449–A0664) | "Samsung Galaxy S20 & Galaxy S21 Series and Samsung Galaxy Watch 3 Series" (A1111–A1326) | "LG Electronics LG V50 & LG V60 Series and LG Watch W7 Series" (A1773–A1988) |

As illustrated above, Plaintiff states that each sub-section is directed to two different smartphone models (e.g., the Apple iPhone 7 and iPhone 8, *see* A0012–A0227) as well as at least one model of smartwatch (e.g., the Apple Watch Series 3, *see id.*)  However, Plaintiff does not explain whether he is contending that:  (a) each smartphone model and smartwatch model individually and separately infringe each asserted claim; or (b) a system made up of a smartphone model together with a smartwatch model infringes each asserted claim.

B.    **Plaintiff's August 23 "Corrected Preliminary Infringement Contentions— Patent Rule 4(E)"**

Additionally, on August 23, 2021, Plaintiff served a supplement to his "corrected preliminary infringement contentions."  A1989–A1996.[3]  While the August 23 supplement

---

[3]    Although the supplement is dated "August 22, 2021" on its face, Plaintiff e-mailed the document to the Government and the Court on Monday, August 23.

purports to be directed to Plaintiff's claimed priority dates for his asserted patents,[4] *id.,* Plaintiff states in the supplement that he is accusing fifty-six additional products of infringement[5]—namely, the "Chipsets" and "CPUs" that he alleges are found in each of the accused Apple, Samsung, and LG smartphone and smartwatch models, *see id.* at A1989–A1990 (accusing "[t]hirty (30) alleged infringing products of Apple," "[t]wenty-seven (27) alleged infringing products of Samsung," and "[t]wenty-seven (27) alleged infringing products of LG") & A1991–1994 (listing accused "Chipsets" and "CPUs").

Plaintiff did not provide any claim charts for these fifty-six different "Chipsets" and "CPUs" in the August 23 supplement to his contentions.  Nor did he address them in his previously filed contentions.

## III.   LEGAL STANDARDS FOR INFRINGEMENT CONTENTIONS

As noted in the Court's July 29 Order, Plaintiff's infringement contentions are subject to the requirements of the Court's Patent Rule 4.  Dkt. 239 at 6–7.

Subpart (c) of Patent Rule 4 requires a plaintiff to provide "a chart identifying where each element of each asserted claim is found within each accused product, process, or method." PRCFC 4(c).  As this Court has previously explained, requiring a plaintiff "to disclose where each element of each infringed claim is found within the accused device . . . is typical in patent

---

[4]    Unrelated to Plaintiff's infringement allegations, Plaintiff now claims that he submitted "[e]ach asserted independent claim . . . (i.e., 25 claims)" of his claimed inventions "to the Government" (by sending them to Congressman Elijah E. Cummings) on December 16, 2002. A1990.  As that date is more than three years before the April 5, 2006 filing date of his oldest asserted patent (the '497 patent), it would render all of Plaintiff's twenty-five asserted independent claims invalid under 35 U.S.C. § 102(b).

[5]    Plaintiff's August 18 Corrected Contentions accused only twenty-eight product models of infringement:  ten Apple models, A0001; nine Samsung models, A665; and nine LG models, A1327.

litigation as its purpose is to put a defendant on notice of all contentions regarding how each claim limitation is allegedly met by the accused device." *Iris Corp. Berhad v. United States*, 84 Fed. Cl. 12, 16 (2008) (citing *O2 Micro Int'l Ltd. v. Monolithic Power Sys., Inc.*, 467 F.3d 1355, 1362–63 (Fed. Cir. 2006)).  This "allow[s] the defendant to pin down the plaintiff's theories of liability . . . thus confining discovery and trial preparation to information that is pertinent to the theories of the case." *Iris Corp. Berhad v. United States*, 2019 WL 2317143, at *2 (Fed. Cl. May 8, 2019) (quoting *O2 Micro*, 467 F.3d at 1365).

Courts have held that merely providing conclusory language that paraphrases the language of the claims is insufficient to satisfy the requirements for a plaintiff's infringement contentions.  *See, e.g.*, *Connectel, LLC v. Cisco Sys., Inc.*, 391 F. Supp. 2d 526, 528 (E.D. Tex. 2005) (explaining that preliminary infringement contentions "providing vague, conclusory language or simply mimicking the language of the claims when identifying infringement fail to comply" with that court's similar local patent rule); *Uni-Splendor Corp. v. Remington Designs, LLC*, 2017 WL 4786085, at *4 (C.D. Cal. Aug. 10, 2017) (finding deficient "contentions [that] fail to identify the structures, acts or materials performing the claimed function, but consist largely of conclusory statements devoid of detail"); *Finjan, Inc. v. Proofpoint, Inc.*, 2015 WL 1517920, at *6 (N.D. Cal. Apr. 2, 2015) (holding that requirements for infringement contentions "cannot be met simply by parroting claim language").  Furthermore, "that a device is capable of being modified to operate in an infringing manner is not sufficient, by itself, to support a finding of infringement." *Telemac Cellular Corp. v. Topp Telecom, Inc.*, 247 F.3d 1316, 1330 (Fed. Cir. 2001) (citing *High Tech Med. Instrumentation v. New Image Indus., Inc.*, 49 F.3d 1551, 1556 (Fed. Cir. 1995)).

Where a party "fails to obey an order to provide or permit discovery, including an order under RCFC 16(b), 35, or 37(a)," RCFC 37(b)(2) provides that "the court may issue further just orders," including "(ii) prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence; (iii) striking pleadings in whole or in part; (iv) staying further proceedings until the order is obeyed; (v) dismissing the action or proceeding in whole or in part."   In particular, this Court has stricken a patent plaintiff's deficient infringement contentions and/or subsequently dismissed infringement claims in their entirety based on a patent plaintiff's failure to serve proper infringement contentions. *See CANVS Corp. v. United States*, 110 Fed. Cl. 19, 33 (2013) (finding dismissal of claims regarding certain devices appropriate based on deficient infringement contentions); *Demodulation, Inc. v. United States*, 126 Fed. Cl. 499, 510 (2016) (granting summary judgment of non-infringement based on deficient infringement contention and denying as moot leave to amend the same).

## IV.   ARGUMENT

### A.   Plaintiff provides no claim charts for his newly added August 23 allegations against fifty-six "Chipsets" and "CPUs."

As noted *supra*, Plaintiff's August 23 supplement to his "corrected preliminary infringement contentions" accuses an additional fifty-six different "Chipsets" and "CPUs" that he alleges are found in each of the accused Apple, Samsung, and LG smartphone and smartwatch models.  *See* A1989–A1990 (accusing "[t]hirty (30) alleged infringing products of Apple," "[t]wenty-seven (27) alleged infringing products of Samsung," and "[t]wenty-seven (27) alleged infringing products of LG"), A1991–A1994 (listing accused "Chipsets" and "CPUs").

These new allegations against an additional fifty-six different "Chipsets" and "CPUs" fail to comply with the requirements of Patent Rule 4, and also fail to comply with the Court's prior

Order directing Plaintiff not to further amend his Sixth Amended Complaint.  *See* Dkt. 239 at 4

(citing Dkt. 215 at 7).  None of these microprocessors were accused of infringement in Plaintiff's

Sixth Amended Complaint.  *See* Dkt. 195.  And Plaintiff has not provided a single claim chart for

any of these fifty-six devices, nor otherwise complied with the requirements of PRCFC 4(c).

Nor has Plaintiff raised a plausible facial allegation that any of these fifty-six devices

could possibly infringe any of Plaintiff's twenty-five asserted claims.  Each of Plaintiff's claims

requires a number of limitations—including sensors/detectors for hazardous substances and

locking/unlocking mechanisms—which would not be present in any of the fifty-six newly

accused "Chipsets" or "CPUs" by themselves; the claimed sensors/detectors, locking

mechanisms, and other limitations require additional structure beyond the microprocessors

themselves.

Plaintiff's improper new allegations against the fifty-six "Chipsets" and "CPUs" should

be struck in their entirety.

> **B.    Plaintiff's "Corrected Preliminary Infringement Contentions" fail to identify
> where the claimed sensors and detectors of hazardous substances are
> allegedly found in any accused product model.**

In striking Plaintiff's original infringement contentions, the Court specifically noted that

while the asserted claims each require "a sensor that is capable of detecting chemical, biological,

or radiological compounds," Dkt. 239 at 6, Plaintiff's contentions "utterly fail to identify any

infringing structures, components, or functionality in the accused product models that could

serve as sensors or detectors," *id.* at 10.

Plaintiff's "corrected" contentions for the claimed "sensors" and "detectors" are similarly

deficient.  For each of the twenty-five asserted claims, Plaintiff now provides identical

arguments for each accused product model and each accused manufacturer.  Plaintiff's

arguments are identical across different products because they do not identify or rely on any

- 10 -

capabilities or features of the particular device being accused of infringement.  Instead,

Plaintiff's arguments rely on:  1) Plaintiff's characterizations of his own alleged inventions

(namely, the functionality of a computer processor); 2) Plaintiff's own patents' specifications;

and 3) a variety of articles describing third-party software and hardware—some of which not

developed until *after* the 2020 filing of his Sixth Amended Complaint—that are unrelated to the

Government and/or to the accused products themselves.

Plaintiff's infringement contentions are thoroughly deficient regarding the claimed

"sensors"/"detectors" of hazardous substances, and should be struck for this reason alone.

1.    ***Plaintiff's new claim charts for the '287 patent cut-and-paste boilerplate argument that fails to identify any claimed sensor or detector in any accused product model.***

Plaintiff's three asserted claims of the '287 patent (claims 4–6) each require sensors or

detectors for detecting hazardous substances.[6]  But Plaintiff's new claim charts fail to identify

where the '287 patent's claimed sensors/detectors are allegedly located in any of the twenty-

eight accused Apple, Samsung, and LG product models.  Instead, Plaintiff merely copies-and-

pastes a boilerplate argument regarding how a computer processor (not a sensor or detector)

allegedly functions, for all asserted '287 patent claims and all accused product models:

> The CPU, which controls all Programmable Logic Controllers
> (PLCs) consists of two basic sections:  the central processing unit
> (CPU) and the input/output interface system. The input/output
> system is physically connected to field devices (e.g., sensors, etc.)
> and provides the interface between the CPU and the information
> providers (inputs) and controllable devices (outputs).  To operate,
> the CPU "reads" input data from connected field devices through the
> use of its input interfaces, and then "executes", or performs the
> control program that has been stored in its memory system. The
> CPU processes instructions in order to carry out certain functions

---

[6] *See* A0009 (Apple claim chart) at A0206 (claim 4 of the '287 patent, requiring "one or more detectors in communication with the at least one CPU for detecting at least one of a chemical, biological, radiological, or explosive agents"); *see also id.* at A0216 (claim 5), A0226 (claim 6).

that make the device operate properly. The CPUs are often described as the brain of computers, smartphones and tablets because of the central role they play in the functioning of your devices.

All of the different components that make up a computer's processor have to be condensed to fit in the smartphone, where they exist as a mobile application processor, or a System-on-a-Chip (SoC). Mobile application processors are found in many different mobile devices, such as smartphones, tablets, and navigational devices.

*See* A0009 (Apple claim chart) at A0206, A0216, A0226, A0424, A0434, A0444, A0643, A0653, A0663; A0672 (Samsung claim chart) at A0869, A0879, A0889, A1087, A1097, A1107, A1305, A1315, A1325; A1334 (LG claim chart) at A1531, A1541, A1551, A1749, A1759, A1769, A1967, A1977, A1989. At best, this can be interpreted as an argument that the processors in the accused products make them *capable* of being connected to sensors. But as the Court noted in its July 29 Order, it is not "sufficient merely to claim that a device may be modified in a way that makes it capable of operating in an infringing manner when the patent claims that specific elements or components 'comprise' the invention." Dkt. 239 at 9–10 (citing *Telemac*, 247 F.3d at 1330). And here, the asserted '287 patent claims all expressly require "detectors."

In addition to the boilerplate paragraphs above, Plaintiff's claim charts for claim 6 of the '287 patent (but not the charts for claims 4 and 5) each additionally list three hyperlinks under the heading "Smart Watches":

1. A citation to a 2015 *Popular Mechanics* article describing a FLIR Systems "program to develop wearable technologies, similar to smartwatches, that can detect nuclear bomb threats and other radioactive material";

2. A citation to a September 2020 *Defense One* article describing a "watch and ring kit" for predicting illness, including COVID-19; and

- 12 -

3.  A citation to a January 2021 article discussing the potential use of smartwatches to detect asymptomatic COVID-19 infections through measurement of pulse and skin temperature.

*See, e.g.*, A0226 (Apple); A0889 (Samsung); A1551 (LG).  But Plaintiff's claim charts for claim 6 of the '287 patent provide no explanation for how the materials in these hyperlinks are allegedly relevant, and they are insufficient in any case to cure the deficiencies of Plaintiff's contentions for these claim limitations.

For example, even assuming that the hypothetical device described by the 2015 *Popular Mechanics* article was actually manufactured and/or used today (and Plaintiff neither alleges nor provides evidence of such manufacture or use), FLIR Systems' product is not accused by Plaintiff in his Sixth Amended Complaint, nor does FLIR Systems' product have any relation to the accused Apple, Samsung, and LG devices.  Similarly, the 2020 and 2021 articles Plaintiff now cites for the first time were not even published by the time that his Sixth Amended Complaint was submitted to the Court in July 2020.  Further, the 2020 article describes different products (the "watch and ring kit") that are not accused by Plaintiff, and the 2021 article discusses measuring a user's pulse and temperature, not "detectors" for "detecting at least one of a chemical, biological, radiological, or explosive agents" as required by the asserted '287 patent claims.

Additionally, Plaintiff's claim charts for these '287 patent claim limitations allege that each of these limitations is not infringed literally, but instead under the doctrine of equivalents. *See, e.g.*, A0206 (Apple); A0869 (Samsung); A1531 (LG).  But as the Court noted in its July 29 Order, an infringement theory under the doctrine of equivalents requires Plaintiff to identify "how the asserted claims are performed in substantially the same function in substantially the same way to obtain substantially the same results."  Dkt. 239 at 12.  And Plaintiff provides no

such function-way-result analysis, instead merely copying and pasting the statements excerpted above.

Plaintiff's claim charts fail to identify any allegedly infringing structure in the accused products that could satisfy the sensor/detector limitations of his '287 patent claims. Accordingly, Plaintiff's infringement contentions for the '287 patent should be struck for this reason alone.

### 2. Plaintiff's new claim charts for the '189 patent cite only to his own patents' specifications and an IPR proceeding, and fail to identify any claimed sensor or detector in the accused products themselves.

The asserted claims of Plaintiff's '189 patent also require sensors or detectors for detecting hazardous substances. For example, asserted claims 7 and 8 of the '189 patent require "a plurality of sensors for detecting at least one chemical, biological, radiological, explosive, nuclear, human or contraband agents and compounds and capable of being disposed within, on, upon or adjacent a multi sensor detection device."

Yet Plaintiff's new claim charts for these '189 patent claim limitations fail to identify any structure or component in any of the accused products that allegedly meets these claim limitations. Instead, for all of the accused products, Plaintiff's new claim charts for these '189 patent claim limitations merely include an excerpt from Plaintiff's *own* patent specification, and a quote from the PTAB's final written decision in the IPR of a *different* patent (U.S. Patent No. RE43,990) that is no longer at issue in the case. *See* A0009 (Apple claim chart) at A0076, A0085, A0294, A303, A0513, A0522; A0672 (Samsung claim chart) at A0739, A0748, A0957, A0966, A1175, A1184; A1334 (LG claim chart) at A1401, A1410, A1619, A1628, A1837, A1846.

Plaintiff's claim charts for these asserted '189 patent claims, which do not even attempt to identify a component in the accused products to meet the sensor/detector limitations, are clearly deficient and should be struck as well.

     ***3.***      ***Plaintiff's new claim charts for the '497 patent, the '752 patent, and the '439 patent relying on the Genel Systems "NODE+" sensor fail to identify or allege any Government use or manufacture of any accused product.***

Plaintiff's contentions for the "sensor/detector" limitations of the '497 patent,[7] the '752 patent,[8] and the '439 patent[9] each reference a product called "NODE+," created by a company known as "Genel Systems Inc." *See* A0009 (Apple claim chart) at A0017, A0024, A0105, A0114, A0181, A0195, A0235, A0242, A0323, A0332, A0399, A0413, A0454, A0461, A0542, A0551, A0618, A0632; A0672 (Samsung claim chart) at A0680, A0687, A0768, A0777, A0844, A0858, A0898, A0905, A0986, A0995, A1062, A1076, A1116, A1123, A1204, A1213, A1280, A1294; A1334 (LG claim chart) at A1342, A1349, A1430, A1439, A1506, A1520, A1560, A1567, A1648, A1657, A1724, A1738, A1778, A1785, A1866, A1875, A1942, A1956.

This is a new infringement theory:  the Genel Systems NODE+ was not cited or discussed in Plaintiff's original infringement contentions (Dkt. 226-2 (Apple), Dkt. 226-3 (Samsung), and Dkt. 226-4 (LG)), and the Genel Systems NODE+ was similarly not cited or discussed in the claim charts attached to the Sixth Amended Complaint,[10] *see* Dkt. 195 at 94–

---

[7]      Asserted claim 1 of the '497 patent requires a "plurality of interchangeable detectors for detecting the chemical, biological and radiological agents and compounds and capable of being disposed within the detector case."

[8]      Asserted claim 10 of the '752 patent requires "a plurality of interchangeable cell phone sensors for detecting the chemical, biological, and radiological agents and compounds and capable of being disposed within the detector case."

[9]      Asserted claim 13 of the '439 patent, for example, requires "at least one of a chemical sensor, a biological sensor, an explosive sensor, a human sensor, a contraband sensor, or a radiological sensor."

[10]      An article discussing the NODE+ was among the 150 pages attached to Plaintiff's Sixth Amended Complaint, *see* Dkt. 195 at 81–84, but the NODE+ and Genel Systems were not referenced or discussed in the Sixth Amended Complaint itself, *see id.* at 1–9.

160.  Further, the Genel Systems NODE+ is not listed among the accused products in Plaintiff's

August 18 or August 23 "corrected preliminary infringement contentions."  *See* A0009 (Apple),

A0672 (Samsung), A1334 (LG), A1990–A1994 (all).  Plaintiff's new infringement theory based

on the Genel Systems NODE+ thus violates both the Court's Order prohibiting further

amendment of Plaintiff's Sixth Amended Complaint, *see* Dkt. 239 at 4 n.1 (citing Dkt. 215 at 7),

as well as PRCFC 4(b)'s requirement that a plaintiff must identify "each product, process, or

method that allegedly infringes [each] identified claim."  For these reasons alone, Plaintiff's new

infringement theory based on the third-party Genel NODE+ sensor should be struck.

Furthermore, even assuming *arguendo* that Plaintiff *had* complied with the Court's

Orders and Patent Rules, the Court would lack subject matter jurisdiction under 28 U.S.C.

§ 1498(a) over the new infringement allegations directed to the NODE+.  Genel Systems is a

private company, and appears to have privately raised money for the development and

manufacture of the NODE+ sensor through private crowdfunding.  *See* A1997–A2005 (*available

at* https://www.kickstarter.com/projects/soldermaster/node-a-modular-handheld-powerhouse-of-

sensors).  And Plaintiff's new claim charts and infringement contentions do not allege that any of

the Genel NODE+ sensors were ever purchased or used by the Government in any way, much

less used by the Government with any of the specific devices that Plaintiff has accused of

infringement.  "Without supporting factual allegations . . . the court cannot assume infringing use

or manufacture by the Government."  Dkt. 130 at 33–34; *see also* Dkt. 239 at 3.

Finally, Plaintiff's new claim charts based on the Genel NODE+ each state that Plaintiff's

new infringement theory is based on the doctrine of equivalents.  But as noted above, a doctrine

of equivalents theory requires Plaintiff to identify "how the asserted claims are performed in

substantially the same function in substantially the same way to obtain substantially the same

- 16 -

results." Dkt. 239 at 12.  Plaintiff provides no such function-way-result analysis, and its new

contentions based on the Genel NODE+ should be stricken for this reason as well.

### 4.  Plaintiff's references to the 2011 CELL-ALL project prototypes are unrelated to any of the products Plaintiff accuses of infringement.

For various other asserted claims in Plaintiff's new contentions, Plaintiff references the

two prototype devices exhibited in 2011 as part of the CELL-ALL program.  *See, e.g.*, A0055

(Apple) (asserted claim 5 of the '189 patent requires a "built-in sensor array or fixed detection

device into the product"); A0718 (Samsung); A1380 (LG).  But these references to 2011

prototypes fail to allege or identify any infringement theory for the *products that Plaintiff*

*accuses of infringement*, and thus cannot satisfy the requirements of PRCFC 4.

The cited two CELL-ALL prototypes were demonstrated in September 2011, as

acknowledged in Plaintiff's Sixth Amended Complaint.  Dkt. 195 at 7.  Yet as the Court noted in

its July 29 Order, "[t]he oldest product listed in plaintiff's contentions is the iPhone 7, which was

released in 2016." Dkt. 239 at 11.  Accordingly, these two prototype devices could not have

been used in 2011 with any of the product models Plaintiff accuses of infringement.[11]  Nor could

the 2011 demonstration of these prototype devices have infringed the '189 patent, which did not

issue until 2015.[12]  And Plaintiff's new infringement contentions fail to provide any evidence or

even allege that any further prototypes or devices were ever created as part of the CELL-ALL

program, much less that such prototypes or devices were ever used with any of the 2016 and later

product models that Plaintiff accuses of infringement.

---

[11]    The 2011 demonstration involved an Apple iPhone 4 and a Qualcomm "form factor" device, not any of the product models Plaintiff accuses of infringement.  *See* Dkt. 195 at 51, 69.

[12]    Similarly, the '752 patent did not issue until 2012, the '439 patent did not issue until 2017, and the '287 patent did not issue until 2018.

Plaintiff's new claim charts based on the 2011 CELL-ALL prototypes fail to satisfy the requirements of PRCFC 4 and should be struck as well.

> **5.      *Plaintiff's references to third-party software applications in the preamble sections of his claim charts do not allege or evidence any Government use or manufacture.***

Finally, in addition to the various deficient theories for the asserted claims' sensor/detector limitations discussed above, Plaintiff references a grab-bag of different third-party software applications that allegedly relate to sensing technology in his new charts for the preambles of the various asserted claims, appearing to suggest that one or more of these alternatives could serve as a viable infringement theory:

- An excerpt from a paper discussing the "eventual goal" of the CELL-ALL project, *see*, *e.g.*, A0012–A10013;

- An excerpt from an article describing a 2020 University of California experiment for detecting COVID-19 proteins using a cell-phone camera, *see, e.g.*, A0013; and

- A third-party "Geiger Counter" and accompanying software application, *see, e.g.*, A0013–A0014.

Yet none of these alternatives present a plausible infringement theory for any of the asserted claims' sensor/detector limitations and any accused product.

As the Court noted in its July 29 Order, merely citing to the "ambition" of the CELL-ALL program is not "the required identification of how the components or methods actually employed by the [accused products] teach the limitations of 'detecting chemical, biological, and radiological agents and compounds.'"  Dkt. 239 at 9.  Similarly, merely referring to non-accused third-party devices (the Geiger Counter) and an article describing a 2020 university experiment "does not meet the requirement of identifying which features of the *accused products* allegedly infringe plaintiff's claim limitations, as required by PRCFC 4," *id.* at 11 (emphasis added).

The alternative theories for the sensor/detector limitations of the asserted claims found in the preamble sections of Plaintiff's new claim charts fail satisfy the requirements of PRCFC 4 and should be struck as well.

**C.    Plaintiff's "Corrected Preliminary Infringement Contentions" fail to identify how any accused product model allegedly performs the claimed locking/unlocking functionality in response to detection of hazardous substances.**

In striking Plaintiff's original infringement contentions, the Court also noted that Plaintiff's contentions failed to "identif[y] a locking feature or explain[] how it operates in a way that infringes" for any accused product.  Dkt. 239 at 10–11.  And as with the "sensor"/"detector" limitations discussed above, Plaintiff's "corrected" contentions fare no better with regard to the "locking feature" of the asserted claims.

For some asserted claims, Plaintiff merely cites to the same boilerplate statement about computer processor functionality that the contentions rely on with regard to the "detector" limitations.  For other asserted claims, Plaintiff merely paraphrases the language of the claims to argue that each accused product is potentially "capable" of performing the requirements of the claims.  And Plaintiff again repeatedly cites to the alleged functionality of unaccused third-party software and hardware, despite the Court previously stating that "[g]enerally referencing consumer software applications" is insufficient to meet the requirements of PRCFC 4, *see* Dkt. 239 at 11.

Plaintiff's "corrected" infringement contentions are also thoroughly deficient regarding the "locking" requirements of the asserted claims, and should be struck for this reason as well.

1.   ***Plaintiff's new claim charts for the '287 patent cut-and-paste boilerplate argument that fails to identify any claimed locking mechanism in any accused product model.***

The asserted claims of Plaintiff's '287 patent (claims 4–6) each require a "locking mechanism."  Yet Plaintiff's new claim charts for these asserted claim limitations fail to identify any such "locking mechanism" in any of the accused products.  *See* A0009 (Apple claim charts) at A0205, A0214, A0224, A0423, A0432, A0442, A0642, A0651, A0661; A0672 (Samsung claim charts) at A0868, A0877, A0887, A1086, A1095, A1105, A1304, A1313, A1323; A1334 (LG claim charts) at A1530, A1539, A1549, A1748, A1757, A1767, A1966, A1975, A1985. Instead, Plaintiff's new contentions—for all of these asserted claim limitations and for all accused products—merely cut-and-paste the same boilerplate argument regarding the alleged functionality of computer processors that he provided for the "detector" limitations of these '287 patent claims (excerpted *supra* in § IV.B.1).  *See id.*

Like with the "detector" limitations, Plaintiff's new contentions for the "locking mechanism" can at best be interpreted as an argument that the processors in the accused products make them *capable* of being connected to locking mechanisms.  But as the Court noted in its July 29 Order, it is not "sufficient merely to claim that a device may be modified in a way that makes it capable of operating in an infringing manner when the patent claims that specific elements or components 'comprise' the invention."  Dkt. 239 at 9–10 (citing *Telemac*, 247 F.3d at 1330).  And here, the asserted '287 patent claims all expressly require a "locking mechanism."

Plaintiff's new claim charts fail to identify any allegedly infringing structure in the accused products that could satisfy the "locking mechanism" limitation of his '287 patent claims. Accordingly, Plaintiff's infringement contentions for the '287 patent should be struck for this reason as well.

     **2.**    ***Plaintiff's new claim charts for the '189 and '439 patent only argue that the accused products are "capable of" the claimed functionality and fail to identify any allegedly infringing component in the accused products.***

The asserted claims of Plaintiff's '189 and '439 patents, like the asserted claims of the '287 patent, also require locking/unlocking functionality.  Asserted claim 2 of the '189 patent, for example, recites the limitation:

> whereupon the monitoring equipment, is interconnected to a product equipped to receive signals from or send signals to the lock disabling mechanism that is able to engage and disengage or disable the lock, activate or deactivate security systems, activate or deactivate multi-sensor detection systems, or to activate or deactivate cell phone detection systems

*See* A0009 (Apple claim charts) at A0042; *see also, e.g., id.* at A0033, A0118, A0194, A0251, A0260, A0336, A0412, A0470, A0479, A0555, A0631; A0672 (Samsung claim charts) at A0696, A0705, A0781, A0857, A0914, A0923, A0999, A0175, A1132, A1141, A1217, A1293; A1334 (LG claim charts) at A1358, A1443, A1519, A1576, A1585, A1661, A1737, A1794, A1803, A1879, A1955.

Yet for each of these asserted '189 and '439 patent claim limitations, Plaintiff's claim charts fail to identify a structure in any of the accused products that allegedly performs the required functionality.  Instead, Plaintiff has merely cut-and-pasted the same boilerplate argument for each accused product, paraphrasing the claim language and arguing that each accused device is "capable of" performing the claimed functionality:

> The alleged infringing devices are is [sic] **capable of** sending signals to lock and unlock doors; activate or deactivate security systems in homes, buildings, or vehicles; detect for Chemical, Biological, Radiological, Nuclear, or Explosive's agents; to stop, stall, or slowdown vehicles, to include driverless land and aerial vehicles; of diagnosing biological and/or chemical medical conditions, and receiving data that the intended task has been accomplished.

- 21 -

*See, e.g.*, A0696 (emphasis added). This is plainly insufficient to meet the requirements of Patent Rule 4. As the Court noted in its July 29 Order, "[m]erely paraphrasing or providing vague descriptions of plaintiff's claim limitations, when identifying features in the accused products, is insufficient." Dkt. 239 at 9. "Nor is it sufficient merely to claim that a device may be modified in a way that makes it capable of operating in an infringing manner when the patent claims that specific elements or components 'comprise' the invention." *Id.* at 9–10 (citing *Telemac*, 247 F.3d at 1330).

Plaintiff's deficient contentions for the asserted '189 and '439 patent claims should be struck for this reason as well.

> **3.** **Plaintiff's new claim charts for the '497 and '752 patents fail to identify any allegedly infringing component in the accused products that performs locking/unlocking in response to detection of a hazardous substance.**

As the Court noted in its July 29 Order, asserted claim 1 of the '497 patent expressly requires locking or disabling the lock of a product in response to detection of a hazardous substance:

> *detection of specific chemical, biological, or radiological agents or compounds by the detectors* causes the lighting of the corresponding indicator light for visual confirmation of the detection and *initiates signal transmission from the cpu to the automatic/mechanical lock disabler to lock or disable the lock of the product* thereby preventing further contamination about the product and denying access to the product by unauthorized, untrained and unequipped individuals.

*See* Dkt. 239 at 10–11 (emphasis in Order). Claim 10 of the '752 patent contains a substantially similar limitation. *See, e.g.*, A0027. Accordingly, the Court directed, "Plaintiff must identify how the accused product incorporates a locking mechanism or meets the unlocking limitations of claim 1 of plaintiff's '497 patent in response to the detection of a hazardous substance." Dkt. 239 at 11. Plaintiff's new claim charts fail to do so.

Instead, Plaintiff's new claim charts for the '497 and '752 patents rely on references to third-party consumer smoke/carbon monoxide detectors and related software applications. *See, e.g.*, A1344 at 11:

> **Smartphone smoke and carbon monoxide (CO) detectors**: Once installed and powered up, you download the relevant app and connect to the device wirelessly. Then, when the alarm goes off, not only do you receive an audio alert—many include helpful voice instructions instead of just a siren—your smart phone also tells you what the problem is (whether it's smoke or CO, which alarm was activated, and sometimes even the severity of the smoke). Many smart smoke detectors hook into additional smart home gear and IFTTT, so you can get even more clever by having the lights start flashing if smoke has been detected, for example. https://www.techhive.com/article/3236299/best-smart-smoke-detector.html

*See also* A0009 (Apple claim chart) at A0019, A0027, A0237, A0245, A0456, A0464; A0672 (Samsung claim chart) at A0690, A0900, A0908, A1115, A1123; A1334 (LG claim chart) at A1344, A1352, A1562, A1570, A1780, A1788.  But this is precisely the type of deficient infringement contention that the Court specifically rejected in its July 29 Order:

> Generally referencing consumer software applications for controlling smart home devices or locking and unlocking car doors does not meet the requirement of identifying which features of the accused products allegedly infringe plaintiff's claim limitations, as required by PRCFC 4.

Dkt. 239 at 11.  And while Plaintiff's new claim charts go on to note that smartphones can be protected using a passcode or fingerprint, *see, e.g.*, A0019, Plaintiff's contentions fail to identify any component or functionality in the accused products that performs locking/unlocking functionality *in response to detection of a hazardous substance*, as required by the asserted '497 and '752 patent claims.

Further, although Plaintiff's new claim charts for the '497 and '752 patents state that these claims' locking/unlocking limitations are infringed under the doctrine of equivalents, *see,*

*e.g.*, *id.*, Plaintiff fails to provide any analysis or argument in his new claim charts as to "how the asserted claims are performed in substantially the same function in substantially the same way to obtain substantially the same results," *see* Dkt. 239 at 12.

Plaintiff's deficient contentions for the asserted '497 and '752 patent claims should be struck for this reason as well.

### D.    Plaintiff's "Corrected Preliminary Infringement Contentions" are thoroughly non-compliant with the requirements of Patent Rule 4.

In addition to the specific deficiencies discussed above regarding the sensor/detector and locking/unlocking functionality required by each of the asserted claims, Plaintiff's 1,966 pages of claim charts for the accused Apple, Samsung, and LG products are rife with other deficiencies, and fail throughout to comply with the requirements of the Court's July 29 Order (Dkt. 239) and Patent Rule 4.

For one, Plaintiff's claim charts repeatedly state that other asserted claim limitations (in addition to those specifically discussed above) are not infringed literally, but under the doctrine of equivalents. But Plaintiff fails to provide any analysis or argument in his new claim charts as to "how the asserted claims are performed in substantially the same function in substantially the same way to obtain substantially the same results" (Dkt. 239 at 12). *See, e.g.*, A0009 (Apple claim chart) at A0016, A0017, A0024, A0025, A0051, A0072, A0077, A0088, A0097, A101, A0127, A0148, A0153, A1064, A1073, A0177, A0186, A0188. Indeed, for the asserted '287 patent claims, Plaintiff asserts that every claim limitation (aside from the preamble) is infringed under the doctrine of equivalents, but has then merely cut-and-pasted the same boilerplate argument regarding alleged functionality of a computer processor for every limitation of the claim. *See, e.g.*, *id.* at A0199–A0207.

Further, for other asserted claim limitations, Plaintiff does not identify any features in the accused product that allegedly meet the requirements of the claim.  Instead, Plaintiff merely paraphrases language from the claim, and then cites to *his own patents' specifications*—not any functionality or components in the *accused products*.  *See, e.g.*, A0009 (Apple claim chart) at A0031, A0032, A0039, A0040, A0048, A0049, A0050.  And in some instances, Plaintiff's new claim charts cite to language from a quote from the PTAB's final written decision in the IPR of a different patent (U.S. Patent No. RE43,990) that is no longer at issue in the case, which has no relevance to whether the accused products infringe the asserted claims.  *See, e.g.*, *id.* at A0057, A0064, A0071, A0076, A0077.

Plaintiff's "corrected" infringement contentions are thoroughly deficient and fail to satisfy the requirements of Patent Rule 4(c) for any asserted claim and any accused product.  Plaintiff's contentions should be struck in their entirety.

## V.    CONCLUSION

Plaintiff's second set of infringement contentions, like Plaintiff's original set of contentions, fail to set forth a plausible theory of Government infringement for any asserted claim and any accused product and do not comply with PRCFC 4.  And as the Court noted in its July 29 Order, "[i]f plaintiff fails to file a claims chart which complies with Rule 4, the court will assume that it cannot be done and that the complaint should be dismissed."  Dkt. 239 at 12.

Plaintiff cannot prepare infringement contentions that comply with PRCFC 4.  Plaintiff's Sixth Amended Complaint should be dismissed, and this case should finally end.

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

GARY L. HAUSKEN
Director


/s/ Grant D. Johnson
GRANT D. JOHNSON
Trial Attorney
Commercial Litigation Branch
Civil Division
Department of Justice
Washington, DC  20530
*Grant.D.Johnson@usdoj.gov*
(202) 305-2513

*Attorneys for the Defendant,*
*The United States*

September 1, 2021

<u>**CERTIFICATE OF SERVICE**</u>

I hereby certify that a true copy of the foregoing "DEFENDANT THE UNITED

STATES' MOTION TO STRIKE PLAINTIFF'S CORRECTED INFRINGEMENT

CONTENTIONS AND TO DISMISS PLAINTIFF'S SIXTH AMENDED COMPLAINT" was

sent on September 1, 2021, via e-mail, to:

Larry Golden
740 Woodruff Road
#1102
Greenville, SC 29607
atpg-tech@charter.net


Plaintiff, *pro se*

/s/ Grant D. Johnson
Grant D. Johnson
Department of Justice